Argued and submitted on December 12, 2007, conviction on Count 33 reversed;
remanded for resentencing; otherwise affirmed June 11, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DONALD ROY MATHESON,
*Defendant-Appellant.*

Multnomah County Circuit Court
040532696; A128359

186 P3d 309

David T. McDonald argued the cause and filed the briefs for appellant.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

A jury convicted defendant of one count of first-degree sodomy, ORS 163.405, two counts of first-degree sexual abuse, ORS 163.427, and three counts of first-degree unlawful sexual penetration, ORS 163.411, for conduct involving the younger of his two daughters. He makes six assignments of error on appeal. We reject the first and third assignments without discussion. In his second assignment, defendant argues that the trial court erred by admitting evidence that he also sexually abused his older daughter—conduct for which he was not indicted. In his fourth assignment, defendant contends that, at the time of the alleged sexual penetration offenses, ORS 163.411 did not apply to digital penetration, and he thus argues that the trial court should have granted his motion for judgment of acquittal as to those charges—that is, Counts 31, 32, and 33. In his fifth assignment of error, defendant again challenges the denial of the motion for judgment of acquittal, arguing that, with respect to two of the counts—Counts 31 and 32—there is insufficient evidence that any penetration occurred. We conclude that any error in admitting evidence concerning defendant's older daughter was harmless. We further conclude that defendant's fourth and fifth assignments of error are unpreserved; however, we exercise our discretion to correct the error as to Count 33 and therefore reverse that conviction.

We take the following facts from the record. Because the jury convicted defendant, we view the facts in the light most favorable to the state. *State v. Charboneau*, 323 Or 38, 40-41, 913 P2d 308 (1996). The victim, defendant's younger daughter, was born on August 17, 1980. In 2003, the victim disclosed to the police that defendant had sexually abused her as a child. Her disclosure led to defendant being charged with 20 counts of first-degree sodomy, 10 counts of first-degree sexual abuse, and six counts of first-degree unlawful sexual penetration.

The indictment did not specify particular incidents or conduct in each of the counts. Each count alleged only in general terms that defendant had committed the particular offense during a period of time that ranged from about two

years to more than seven years.[1] Defendant filed a demurrer challenging the indictment on vagueness grounds. The trial court denied the demurrer, stating that it would require the state to make an election at the close of its case-in-chief as to which counts corresponded to particular instances of conduct that would be shown by the evidence.

At the trial, the victim testified that defendant began abusing her when she was very young, stating, "I can't remember a time when I wasn't sexually abused by my father," and that it continued approximately once a month until she was a freshman in high school. She stated that, in order to convince her that his conduct was "normal," defendant told her that he had "sexually touched" her sister and that it was normal in some cultures to have sexual contact between family members.

The victim testified about 10 specific incidents of sexual contact that she had with defendant. We recount only the portions of her testimony that are pertinent to the issues on appeal, namely, the portions related to Counts 31, 32, and 33, which charged defendant with unlawful sexual penetration.[2] She did not describe the incidents in chronological order; rather, she described various incidents that occurred in each of the rooms in the family's home, proceeding from room to room.

In describing one incident, the victim stated, "There was one time where [defendant] showed me Internet pornography. And I was on his lap, and he touched his fingers in my vagina." When pressed for further detail by the prosecutor, the victim stated that defendant had called her into the

---

[1] For example, Count 1 of the indictment charged first-degree sodomy as follows:

"The said Defendant(s), DONALD ROY MATHESON, on or between January 1, 1985 and August 16, 1992, in the County of Multnomah, State of Oregon, did unlawfully and knowingly engage in deviate sexual intercourse with [the victim], a child under the age of twelve years, the said [victim] being the said defendant's daughter, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

[2] Defendant's second assignment of error, in which he challenges the admission of evidence that he had abused his older daughter, pertains to all of his convictions. However, the details of the incidents underlying those convictions are not material to his argument, so we need not recount them.

den, asked her to sit on his lap, and showed her pornographic pictures on the computer. She stated that, while he was showing her the pictures, he unzipped her pants and "touch[ed] my vagina with his hand." The prosecutor then asked how defendant had touched her:

"Q And do you recall when he touched you vaginally, was that over your panties, under your panties?

"A Under my panties.

"Q And do you recall when he touched you, did he penetrate at all inside of you or just remain on the outside?

"A He remained on the outside.

"Q And lastly, did he keep his fingers in one place or did they move around?

"A They moved around my vagina."

The victim was not precise about when the incident occurred. Initially, she stated that it was "probably late middle school, so maybe seventh or eighth grade," which would have made her 12 or 13 years old, meaning that the incident occurred between late 1992 and mid-1994. However, when describing one of the pictures that defendant showed her, she stated that it depicted two girls that were "maybe my same age," adding, "So that would have been 11 or 12 or 13. Yeah, 11 or 12." Thus, the incident could have occurred as early as August 1991.

The prosecutor asked the victim whether there were any other instances of inappropriate touching in the den. She explained that defendant had touched her multiple times in the different rooms in the house and that she could not recall every occurrence, but stated, "I know that it happened at least a couple more times. And I can remember, you know, on one occasion where it happened and I was sitting on his lap again on the couch in the den," adding that "he was putting his fingers on my vagina and moving them around." She did not make any reference to when that incident occurred or how old she was at the time.[3]

_____

[3] The state argues that, "fairly construed," that incident is the same as another one that the victim described, in which defendant had her watch a pornographic movie about an incestuous relationship between a father and daughter. According

The victim then testified about several instances of sodomy and other sexual abuse that took place in her bedroom and defendant's bedroom. She testified in detail about each incident, including her age at the time. The victim then described an incident that occurred in the living room. She stated, "I think I was in elementary school. So I was between grades one and five. * * * I can't give you [a] more specific age on that." She stated that defendant had suffered a back injury that required him to stay home from work for two or three months. She testified that, one day during that period, defendant was resting in the living room: "So he wanted me to come over and give him some attention, and I did. And then he eventually took off my pants and started to touch my vagina with his fingers." The prosecutor asked whether there was skin-to-skin contact. The victim responded, "Yes. His fingers actually went in my vagina this time."

After the victim testified, the state called her sister, E, as a witness. Her testimony was very brief.[4] After she gave some cursory background information, she testified that, around 1995, she had disclosed to a counselor that she had had sexual contact with defendant when she was a child. She also testified that the contact had occurred "not infrequently, but not all the time. It was occasionally." She then explained briefly the circumstances that led her to speak with the counselor, which were not related to the sexual contact with defendant. On cross-examination, she spoke about her upbringing and her relationship with her parents, but said nothing more about sexual abuse.

The jury heard from several sources that defendant had abused E. The victim's mother testified that defendant had admitted to her that he had abused E. The trial court also admitted into evidence tape recordings and transcripts of two "pretext" telephone calls, one between defendant and

to the victim, that occurred within two weeks of the incident with the Internet pornography. Thus, the state argues that the incident on the couch occurred within weeks of the incident with the Internet pornography. We disagree. The victim testified that she did not remember any sexual contact occurring between her and defendant when he had her watch the incest movie. The record thus does not support the inference that the "couch" incident and the "incest movie" incident were one and the same.

[4] Her entire testimony occupies nine pages in the trial transcript.

the victim and one between defendant and his son; in both, defendant admitted that he had abused E.

At the close of the state's case-in-chief, the prosecutor acknowledged that the state had not met its burden of proof on all of the counts in the indictment and stated that she was prepared to dismiss some of the charges. The court allowed her to defer making an election as to which charges on which to proceed until the close of all the evidence. Defendant reserved making a motion for judgment of acquittal pending the state's election.

Defendant testified in his own defense. He denied having ever abused the victim, but, in his direct examination, he admitted having abused E:

> "Q You heard your daughter, [E], testify that you sexually abused her when she was younger, correct?
>
> "A That's correct.
>
> "Q Do you agree with that?
>
> "A Absolutely."

Defendant went on to say that E was "totally and completely victimized by me."

After the defense rested, the prosecutor elected to proceed on only 12 of the 36 counts in the indictment: four counts of sodomy, five counts of sexual abuse, and three counts of unlawful sexual penetration. The prosecutor submitted a chart that listed the 10 incidents about which the victim had testified and specified the count or counts that corresponded to each incident. For eight of the incidents, the prosecutor proceeded on only one count. For the other two incidents—the two that occurred in the den—she elected to proceed on both sexual abuse (Counts 22 and 23) and unlawful sexual penetration (Counts 31 and 32).

Defendant then moved for judgment of acquittal. Defense counsel initially stated, "Our motion for judgment of acquittal is directed at all 36 counts." The court responded:

> "I think in a moment we're going to dismiss—I mean, what I understand is the State's going to turn around to dismiss

the remaining counts, somewhat depending on the motion for judgment of acquittal.

"So what I would ask I guess is at that point we focus on the counts that the State has elected to proceed on."

Counsel then stated, without elaboration, "At this time, Judge, the defense would move for a judgment of acquittal as to the counts we just discussed." The court denied the motion, stating that there was sufficient evidence from which the jury could find defendant guilty.

The prosecutor then stated that, in addition to the counts that she had elected not to proceed on, the state would also dismiss the two counts of sexual abuse that corresponded with the two incidents in the den. In other words, for those incidents, the state proceeded only on the charges of unlawful sexual penetration.

The jury found defendant guilty of nine of the 10 counts that were submitted to it. It failed to reach a verdict as to one count of sexual abuse, and the court declared a mistrial as to that count. The court also granted a defense motion in arrest of judgment and dismissed three of the sodomy counts on statute of limitations grounds.[5] At sentencing, the court imposed concurrent sentences on five of the remaining six convictions, but it ordered the sentence on the sixth—for the unlawful sexual penetration incident in the living room when defendant's back was injured—to run consecutively to the other sentences.

■ On appeal, defendant challenges the trial court's admission of evidence that he abused his older daughter, E. Defendant argues that it constituted "prior bad act" evidence that the court could not admit without conducting an analysis under OEC 404(3), which, he contends, the court failed to

---

[5] The three counts that the court dismissed alleged that the conduct had occurred as early as January 1, 1985. The statute of limitations for sodomy at that time was three years. *See* ORS 131.125(2)(a) (1983). The legislature extended the limitation period in 1989 and again in 1991. Or Laws 1989, ch 831, § 1; Or Laws 1991, ch 388, § 1. The court dismissed the three counts because the limitation period on the offenses alleged could have run as early as January 1, 1988. *See State v. Harberts*, 198 Or App 546, 556, 108 P3d 1201 (2005), *rev den*, 341 Or 80 (2006) (retroactive extension of an expired statute of limitations amounts to an impermissible *ex post facto* law).

do. Defendant argues that the jury may have convicted him based on the evidence that he abused E. In response, the state argues, among other things, that any error in admitting the evidence was harmless, given that defendant himself testified that he had abused E.

■ We agree with the state. Assuming, without deciding, that the trial court erred in admitting the challenged evidence, the error was rendered harmless by defendant's testimony. Erroneously admitted evidence is harmless if the defendant testifies about the same facts, even if the defendant's testimony is in response to the erroneously admitted evidence, as long as the erroneously admitted evidence is not an unlawfully compelled confession by the defendant— which, in this case, it is not. *State v. McGinnis*, 335 Or 243, 251-54, 64 P3d 1123 (2003). The erroneous admission of evidence does not vitiate the voluntariness of the defendant's later decision to testify in his own behalf. *Id.* We reject defendant's argument without further discussion.

■ We turn to defendant's fourth assignment of error, in which he argues that the trial court erred in denying his motion for judgment of acquittal as to the three counts of unlawful sexual penetration—Counts 31, 32, and 33—based on the timing of the conduct for which he was convicted. Defendant points out that, until September 29, 1991, ORS 163.411, the statute under which he was convicted, did not apply to digital penetration. *Compare* ORS 163.411(1) (1989) ("[A] person commits the crime of sexual penetration with a foreign object in the first degree if the person penetrates the vagina, anus or penis of another with any object *not a part of the actor's body* * * *." (Emphasis added.)) *with* ORS 163.411(1) (1991) ("[A] person commits the crime of unlawful sexual penetration in the first degree if the person penetrates the vagina, anus or penis of another with any object *other than the penis or mouth of the actor* * * *." (Emphasis added.)).[6] He further notes that the indictment alleged that each of the three counts of unlawful sexual penetration occurred on or between January 1, 1990 and August 16, 1992. According to defendant, the state failed to prove that any of

_____

[6] ORS 163.411 was amended by Oregon Laws 1991, chapter 386, section 2, which took effect on September 29, 1991.

the three counts occurred after ORS 163.411 was amended in 1991.

■ The state responds, among other things, that this assignment of error is unpreserved. We agree. "[A] general motion for judgment of acquittal without specifying any theory on which the state's proof was legally insufficient * * * preserves no ground for challenge on appeal." *State v. Schodrow*, 187 Or App 224, 231 n 5, 66 P3d 547 (2003). Given that there were 12 counts encompassing three different crimes before the trial court at that point, defendant's generic motion failed to alert the trial court to the error that he asserts on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (to preserve an error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted").

■ Thus, the question before us is whether the trial court committed plain error in denying the motion for a judgment of acquittal. To qualify as "plain," an error must (1) be one of law; (2) be obvious—that is, not reasonably in dispute; and (3) appear on the face of the record, such that we need not go outside the record or choose between competing inferences to find the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Even if the error is plain, we must exercise cautious discretion in deciding whether to correct the error. *See id.* at 382 ("A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution."). For defendant to prevail, it must be beyond dispute that there is no evidence from which the jury could conclude that the offenses occurred after September 29, 1991, the date on which the amendment to ORS 163.411 became effective.

We begin with Count 31, which corresponds to the incident in the den in which defendant showed the victim Internet pornography. The victim testified that she was 11, 12, or 13 years old at the time. The victim's eleventh birthday was on August 17, 1991, only six weeks before the statutory amendment took effect. Although it is conceivable that the offense took place during that short period, the jury could

reasonably find that it took place after the effective date of the statutory amendment. *See State v. Hall*, 327 Or 568, 574, 966 P2d 208 (1998) (if the evidence supports multiple reasonable inferences, it is for the trier of fact to decide which inference to draw and whether that inference establishes the ultimate fact in issue beyond a reasonable doubt). Accordingly, there is no error, let alone plain error, with respect to Count 31.

Count 32 corresponds to the incident on the couch in the den. In testifying about that incident, the victim made no reference to when it occurred, whether in terms of what year it was, her age, what grade she was in, or relative to other incidents. The record is devoid of any evidence as to when the incident took place. Because there is no evidence from which the jury could have concluded that defendant committed the act after the effective date of the statutory amendment, defendant's conviction on that count is plainly erroneous.

The question remains whether we should exercise our discretion to reach the error. Under the circumstances, we do not. The factors that we consider in determining whether to correct an unpreserved error include the ends of justice in the particular case, the gravity of the error, and whether the policies underlying the preservation requirement were served in another way. *Ailes*, 312 Or at 382 n 6. One of the policies underlying the preservation requirement is that of allowing the opposing party the opportunity to respond to the asserted error. *See Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (preservation rules are intended to ensure that parties clearly present arguments to the trial court and that other parties are not taken by surprise, misled, or denied opportunities to meet an argument); *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (citing "fairness to the adversary parties" as a justification for preservation rules).

Had defendant raised the error that he now asserts on appeal, the state could have done one of two things. It could have moved to reopen the record to elicit testimony from the victim as to when the incident occurred, or it could have dismissed Count 32 instead of Count 23 and proceeded

with the charge of sexual abuse, which would not have presented the statutory timing issue that defendant now raises. The latter possibility is particularly compelling: It appears that, when the state made its election, it elected to essentially hold Counts 22 and 23 in reserve pending defendant's motion for judgment of acquittal and the trial court's ruling on that motion. The state dismissed those counts only after the court denied defendant's motion. Had defendant identified the deficiency in the state's evidence as to Count 32, the court would presumably have granted the motion for judgment of acquittal. That ruling would very likely have altered the state's decision as to whether to dismiss Count 23.

Because defendant's failure to properly preserve the error that he asserts on appeal impeded the state's ability to effectively prosecute him for his conduct, the policies underlying the preservation requirement were undermined and, consequently, the ends of justice counsel against reaching the error. We therefore decline to exercise our discretion to do so.

We turn next to Count 33, which corresponds to the incident in the living room when defendant's back was injured. The victim testified that she was in elementary school at the time—that is, she was between the first and fifth grades.[7] She also testified that she was 11 years old when she was in the sixth grade. Her eleventh birthday was in August 1991. Thus, by the time ORS 163.411 was amended in September 1991, the victim was in the sixth grade, so the abuse necessarily occurred before the amendment took effect. It follows that there is no evidence from which the jury could have found that defendant committed the act after the effective date of the statutory amendment. Because there is no reasonable dispute as to whether the act occurred before or after the amendment, defendant's conviction on Count 33 is plainly erroneous.

---

[7] The state notes that the victim's mother testified that, when defendant injured his back, the children were in late elementary school or middle school. The state asserts that the jury could have inferred from that testimony that, contrary to what the victim herself said, the incident occurred when she was in middle school and, thus, after the statute was amended. We disagree. Her mother testified that "[t]he children were not in high school at that point." E, the oldest child, is four years older than the victim. Even if she had been in her last year of middle school—eighth grade—the victim could not have been in the sixth grade yet. Thus, her mother's testimony corroborates, rather than contradicts, the victim's testimony.

Again, the question remains whether we should exercise our discretion to correct the error. The circumstances here differ from those surrounding Count 32. The state did not elect to proceed on any sexual abuse charge with respect to the incident underlying Count 33, so defendant's failure to raise the error did not deprive the state of a "fallback" count on which it could have proceeded.

Furthermore, unlike in Count 32—where the victim made no reference to the timing of the incident, leaving open the possibility that additional testimony could have demonstrated that it occurred after the statute was amended—here, although she could not pinpoint the precise time, the victim stated that she was in elementary school when it occurred, an assertion that is corroborated by her mother's testimony. Thus, it is unlikely that the state would have been able to reopen the record and elicit additional testimony to show that the incident actually occurred after the statute was amended.

In short, it does not appear that the state was prejudiced by defendant's failure to preserve the error with respect to Count 33. On the other hand, if we do not reach the error, defendant will have an additional conviction on his record and will be required to serve a substantially longer sentence. In light of the gravity of the error, we conclude that an exercise of our discretion to correct the error as to Count 33 is warranted.

 We turn next to defendant's fifth assignment of error. Defendant contends that the state failed to prove unlawful sexual penetration as to Counts 31 and 32, arguing this time that there is insufficient evidence of penetration and, thus, that the trial court erred in denying his motion for judgment of acquittal on those counts. Defendant notes that, with respect to Count 31, when the victim was asked whether defendant penetrated her vagina, she testified that he "remained on the outside." With respect to Count 32, defendant notes that the victim testified that he put his fingers "on" her vagina. He contrasts that statement with her testimony regarding Count 33, in which she stated, "His fingers actually went in my vagina this time."

In response, the state points out that, with respect to Count 31, the victim's testimony was inconsistent, noting that, at one point, she stated that defendant "touched his fingers in my vagina." With respect to both counts, the state notes that the victim testified that defendant's fingers "moved around" her vagina. According to the state, the jury could reasonably have inferred that some slight penetration occurred as a result of that movement. The state also notes that the victim suffered multiple urinary tract infections, arguing that the jury could have inferred that they were caused by digital penetration.

We need not resolve the parties' arguments on the merits. For the same reason that defendant's fourth assignment of error is unpreserved, this assignment is unpreserved as well. Assuming, without deciding, that the trial court committed plain error, we decline to exercise our discretion to correct the error. Again, when the state made its election as to which counts to proceed on, with respect to the two incidents in the den, in addition to Counts 31 and 32, it elected to proceed on two counts of sexual abuse as well. Had defendant raised the error that he asserts on appeal, the state could have proceeded on the sexual abuse counts, which did not require proof of penetration. *See* ORS 163.427. Thus, for the reasons cited above, we decline to exercise our discretion to correct the error, if any, raised in this assignment.

In a supplemental assignment of error, defendant challenges the court's imposition of a consecutive sentence on Count 33. Our reversal of that conviction obviates the need to address the supplemental assignment.

The state cross-assigns error to the trial court's exclusion of evidence pertaining to conduct that defendant allegedly committed outside of Multnomah County, where he was tried in this case. Because admission of that evidence would not have corrected the deficiency as to Count 33, we need not address the state's cross-assignment of error.

Conviction on Count 33 reversed; remanded for resentencing; otherwise affirmed.