STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT DEAN ROSS,
aka Robert D. Roth,
*Defendant-Appellant.*

Deschutes County Circuit Court
12FE0153; A151742

349 P3d 620

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Senior Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the briefs for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who was convicted of various sexual offenses involving multiple victims, appeals. We write only to address defendant's assertions that the trial court committed reversible "plain error" by (1) admitting "vouching" testimony by a witness, Muggia, relating to victim RW's credibility with respect to Count 4 (first-degree unlawful sexual penetration) and (2) failing to instruct the jury as to the requisite mental state for forcible compulsion, a material element of first-degree sodomy and attempted first-degree sodomy, as charged in Counts 1 and 5. As explained below, the asserted errors either do not qualify as "plain error," *see State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990), or we decline to exercise our discretion to correct them, *see Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Accordingly, we affirm defendant's convictions.[1]

As pertinent to our review, defendant was charged with, and convicted of, committing sex offenses against a girl and two women who are directly, or collaterally, related to his wife: (1) RW, his step-granddaughter; (2) E, an adult cousin of RW's; and (3) RB, his adult step-daughter and RW's mother. As explained more fully below, the only charge relating to RW was Count 4 (first-degree unlawful sexual penetration). Counts 1 (first-degree sodomy) and 5 (attempted first-degree sodomy) related to E and RB, respectively. We separately relate the predicate circumstances of those charges below in our consideration of the asserted plain error as to each. For narrative and analytical coherence, we begin with the alleged impermissible vouching for RW's credibility.

1. *Count 4: Admissibility of Muggia's "Vouching" Testimony*

At the time of the charged conduct, sometime during the summer of 2006, RW was 10 years old. RW and her older

---

[1] Defendant raises three separate assignments of error relating to alleged "plain error" in the admission of "vouching" testimony by three different witnesses as to Count 4. We address only the first of those statements; the latter two statements do not warrant published discussion.

We further reject, without published discussion, defendant's fourth assignment of error, challenging the denial of his motion to sever the trial of counts pertaining to the different victims.

sister, S, were living with defendant and his wife, their maternal grandmother. According to RW, she awoke one morning to find defendant touching her genital area. That incident was not reported until May 18, 2007, when S disclosed it to a school counselor. That same day, S repeated the allegations to Child Protective Services child abuse investigator Valentina Muggia. Muggia, in turn, interviewed RW, who provided further details about the alleged abuse.

The state charged defendant with first-degree unlawful sexual penetration, ORS 163.411. Both RW and Muggia testified at trial. On direct examination, Muggia recounted RW's statements and demeanor during the May 18, 2007, interview. Then, after referring to Muggia's extensive training and experience interviewing child victims, the prosecutor and Muggia had the following exchange about that interview:

"Q. *** [W]hat were the significant observations that you made in determining that there—there is a need for help here or intervention?

"A. Well, one is the—the specific amount of details that [RW] was able to disclose during the interviews. And then also her—her demeanor in how much this interview[] was affecting it and—and her anger that she had in expressing her feelings. *Those were all collectively what led me to believe that indeed she had been molested.*"

(Emphasis added.)

The italicized statement is the basis of defendant's appellate assertion that Muggia impermissibly vouched for RW's credibility. Defense counsel did not object to, or move to strike, that statement. Rather, on cross-examination, defense counsel revisited Muggia's opinions as to RW's believability:

"Q. Okay. And part of your investigation, is it to decide whether what's being disclosed is true or not?

"A. I—I—part of my investigation is to determine whether I have enough evidence to say that child abuse has occurred.

"Q. Okay. And part of that evidence is to determine whether the—whether the child is telling the truth?

"A. I suppose so, yeah.

"Q. Okay. Well, you have to, I mean—okay. So you don't care so much about whether they're telling the truth if there's evidence?

"A. I guess it's in my experience if I founded the cases is because the child has been telling the truth.

"Q. Okay. So is it—have you investigated cases when child—children were not telling the truth?

"A. I—believe it or not, in my experience I only had two cases where the child was not talking—not saying the truth, and generally was because has been coached by a parent.

"Q. Okay. Or another person?

"A. Correct. So over 600-plus cases, I only had two.

"Q. So during your investigation process do you take precautions to make sure a child hasn't been coached?

"A. Well, that's part of the training that we received, yes.

"Q. Okay. So in this investigation did you take any steps to make sure no one was coaching her?

"A. Based on my experience, the way that the child disclosed, the amount of detail, and how she talked to me, she had not been coached.

"Q. Okay. Now, you said when you first talked to her she wanted to know what her sister had said.

"A. Uh-huh.

"Q. Didn't that throw up a flag for you?

"A. No, not at all. A lot of children, you know, do that, especially if they've been talked to—you know, they talk to a sibling about abuse that has happened. Especially if it's an older sibling, you know, they want to know that they are okay. They want to know that their sibling is okay. And so that's actually very common.

"Q. Okay. So—but—so you don't think that's a flag at all, that one person—one child is trying to make sure they're saying the same story as another child?

"A. No. Not in this case.

"Q.   Okay. Do you think that's a mistake to do that?

"A.   I—I don't. I guess from my experience is that when a child has been coached, they're not able to provide the details. They are very repetitive with the same answer. And so you can ask a different question, and the answer will be just the same. They're very limited in what they can offer. And this was not the case for [RW]."

Thus, defense counsel's questions not only invited Muggia to reiterate her previously expressed opinion about RW— but also called, repeatedly, for her to further develop and to defend that opinion.

During closing arguments, neither party mentioned Muggia's assessment of RW's believability. The state, in referring to Muggia's testimony, focused on the content of the statements that RW made to Muggia but did not comment on Muggia's assessment of the truthfulness of those statements.

On appeal, defendant argues that the trial court erred by failing to *sua sponte* exclude or strike Muggia's statement that, based, in part, on RW's statements, Muggia "believe[ed] that indeed she had been molested." Defendant acknowledges that he failed to raise that issue before the trial court, but argues that the admission of that statement constitutes an "error of law apparent on the record," ORAP 5.45(1), and that we should exercise our discretion under *Ailes* to correct it.

Generally, we will not consider an unpreserved issue on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). We may, however, review an unpreserved assignment of error as one "apparent on the record" if (1) the error is one of law; (2) the legal point is "obvious"—that is, "not reasonably in dispute"; and (3) the error appears "on the face of the record," such that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *Brown*, 310 Or at 355.

If those requirements are satisfied, we must then decide whether we should exercise our discretion to correct the error, based on the totality of the circumstances. *See Ailes*, 312 Or at 382 (even if an error is plain, the appellate court "must exercise its discretion to consider or not to consider the

error, and if the court chooses to consider the error, the court must articulate its reasons for doing so"). Factors bearing on that inquiry include, but are not limited to,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way."

*Id.* at 382 n 6.

Under the first and second *Brown* plain error requisites, the operative question must be legal and its correct resolution must not be reasonably in dispute. In those respects, defendant argues—and the state concedes—that the statement italicized above constituted impermissible "vouching" under *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983), *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), and *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010). That line of cases established, and amplified, the rule that "one witness may not give an opinion on whether he or she believes that another witness is telling the truth." *Lupoli*, 348 Or at 357. We agree that Muggia's statement was an improper comment on another witness's credibility because, in making it, Muggia necessarily implied that she believed the victim's statements during the 2007 interview. *See id.* at 355, 362-63.

The state remonstrates, however, that the asserted error is not plain because it does not comport with the third *Brown* requisite—that is, that it is not "apparent on the face of the record" because we must "choose between competing inferences" to reach it. According to the state's theory, defense counsel's cross-examination of Muggia supports a plausible inference that there was a conscious tactical choice not to move to strike Muggia's comment (as opposed to not making a conscious choice at all, for whatever reason)— and, therefore, that the error is not "apparent" because we must "choose between competing inferences" to reach it. *See State v. Lovern*, 234 Or App 502, 511-12, 228 P3d 688 (2010) (rejecting state's argument that defense counsel made tactical choice as implausible "regardless of whether it is more properly directed to the third plain error prerequisite or

to the proper exercise of *Ailes* discretion"); *compare State v. Ramirez-Estrada*, 260 Or App 312, 317 P3d 322 (2013), *rev den*, 355 Or 317 (2014) (concluding that a trial court's failure to *sua sponte* exclude "vouching" testimony was not plain error because it was plausible that counsel made a strategic decision not to move to strike that testimony), *with State v. Pergande*, 270 Or App 280, 284-85, 348 P3d 245 (2015) (rejecting state's argument that defense made tactical choice not to object to "vouching" testimony as implausible and speculative).

We need not resolve that matter. Even assuming, without deciding, that the trial court's failure to *sua sponte* exclude Muggia's statement constituted plain error, we would not, in any event, exercise our *Ailes* discretion primarily because, in these circumstances, any error was harmless. *See State v. Matheson*, 220 Or App 397, 405, 186 P3d 309 (2008) (assuming, without deciding, that the trial court erred in admitting the challenged evidence, the error was rendered harmless by other evidence).

In many cases where credibility is critical to the outcome, even a single "vouching" statement by a witness like Muggia, with years of experience and training in the field of child abuse prevention, can be given considerable weight by the jury. *See State v. Bahmatov*, 244 Or App 50, 55, 260 P3d 592 (2011); *see also Berg v. Nooth*, 258 Or App 286, 299-302, 309 P3d 164 (2013) (in post-conviction case, concluding that trial counsel's failure to take corrective steps after admission of "vouching" testimony was prejudicial). Here, however, Muggia's initial statement on direct examination was completely eclipsed by the far more repetitive and detailed exacerbating testimony elicited by defense counsel on cross-examination. *See* 271 Or App at 3-5. For obvious reasons, defendant does not contend that the admission of *those* responses constituted reversible plain error.[2]

---

[2] Defendant does not contend that counsel's questions of Muggia on cross-examination were merely a "repair effort"—derivative of, and necessitated by, Muggia's vouching testimony on direct examination. *Accord State v. Hollywood*, 250 Or App 675, 679, 282 P3d 944 (2012) (rejecting "conscious tactical choice" argument as implausible where reaction to impermissible sexual diagnosis testimony was "purely defensive" and the defendant accrued no strategic advantage from its admission).

To the extent that Muggia's comments may have affected the jury's verdict, any such effect was far more likely the product of her responses to defense counsel's questions on cross-examination than of her single, conclusory remark on direct examination. Accordingly, given the likelihood that the asserted plain error was rendered harmless because of the other testimony that was elicited by the defense, we decline to exercise our *Ailes* discretion. Defendant's conviction as to Count 4 is affirmed.

2. *Counts 1 and 5: Jury Instructions on Forcible Compulsion*

As noted briefly above, defendant also contends that the trial court committed reversible plain error by failing to instruct the jury as to the requisite mental state for forcible compulsion with respect to Count 1 (first-degree sodomy, involving E) and Count 5 (attempted first-degree sodomy, involving RB). Defendant's contention, as amplified below, is predicated on *State v. Nelson*, 241 Or App 681, 688, 251 P3d 240 (2011), *rev dismissed*, 354 Or 62 (2012), and on various post-*Nelson* decisions in which we have held that the failure to give the instruction prescribed in *Nelson* constituted plain error and exercised our discretion under *Ailes* to remedy that error. *See, e.g., State v. Capote*, 266 Or App 212, 337 P3d 858 (2014); *State v. Gray*, 261 Or App 121, 322 P3d 1094 (2014). The state counters that the asserted instructional error did not satisfy the requisites of plain error with respect to either Count 1 or Count 5 and that, in all events, we should decline to exercise our *Ailes* discretion.

For the reasons that follow, we conclude that, with respect to Count 1, the failure to instruct on the requisite mental state as to forcible compulsion constituted plain error, but we decline to exercise our *Ailes* discretion to correct that error. With respect to Count 5, we conclude that, in the circumstances here, involving an extension of *Nelson* to an *attempt* crime, the correctness of such an extension is subject to reasonable dispute, precluding plain error review. *Brown*, 310 Or at 355. Accordingly, we affirm defendant's convictions on Count 1 and Count 5.

We begin with the predicate circumstances of Count 1, pertaining to E. E, who was then 25 years old, has spastic diplegia, a form of cerebral palsy, and uses a wheelchair.

She alleged that defendant sexually assaulted her on several occasions, including in March 2011, when he came to her residence, ostensibly to help her with household chores, and proceeded to grope her and ask her to give him oral sex. According to E, after she declined, defendant grabbed the back of her head with his hands and forcibly put his penis in her mouth and proceeded to force oral sex for several minutes.

Based on those allegations, the state charged defendant with first-degree sodomy, alleging that he "did * * * knowingly, by forcible compulsion, cause [E] to engage in deviate sexual intercourse with * * * defendant (defendant forcing [E] to give him oral sex - [E's] mouth to defendant's penis)."[3]

At trial, E testified as described above. She also testified that defendant's sexual advances were predatory and unwanted, and denied ever having any kind of consensual sexual or romantic relationship or encounter with defendant. By contrast, the defense contended that defendant had engaged in a series of mutually consensual sexual encounters with E, including the March 2011 incident. The defense, asserting that E had lied about the nature of their involvement, maintained that defendant's conduct was not criminal because E had consented, and denied that defendant had subjected E to forcible compulsion during the March 2011 incident.

As material to our review, the trial court instructed the jury as follows:

"Sodomy in the first degree, Count 1. Oregon law provides that a person commits the crime of sodomy in the first degree if the person knowingly engages in deviate sexual intercourse with another person and if the victim is subjected to forcible compulsion by the defendant.

"In this case, to establish the crime of sodomy in the first degree, the State must prove beyond a reasonable doubt the following four elements:

---

[3] "A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if * * * [t]he victim is subjected to forcible compulsion by the actor." ORS 163.405(1).

"*****

"3. [Defendant] knowingly had deviate sexual intercourse with [E].

"4. [E] was subjected to forcible compulsion by the defendant."

The jury found defendant guilty on all charges, including Count 1 as well as two other charges involving E.

As noted, on appeal, defendant asserts that, given *Gray* and its progeny, the trial court plainly erred by failing to instruct the jury as to the requisite culpable mental state with respect to the element of forcible compulsion on Count 1. For the reasons that follow, we agree with defendant that the asserted instructional error was plain error, but we decline to exercise our *Ailes* discretion.

Under our holdings in *Gray*, 261 Or App at 130, and *Nelson*, 241 Or App at 688, it is beyond reasonable dispute that, where a completed crime includes the element of forcible compulsion, a trial court errs when it fails to give an instruction that the state must prove that the defendant possessed the alleged culpable mental state in using forcible compulsion to commit that crime. Here, the state charged defendant solely with a "knowing" mental state as to first-degree sodomy and, consequently, was required to prove that defendant acted with that mental state with respect to all material elements of the crime, including the element of forcible compulsion. *Nelson*, 241 Or App at 688-89. The trial court, in turn, was required to instruct the jury that, as to that element, "it must determine that the state has proved beyond a reasonable doubt that defendant acted with a culpable mental state in subjecting the victim to forcible compulsion." *Gray*, 261 Or App at 130. Here, it is undisputed that the trial court's instructions as to Count 1 did not satisfy that requisite. We further conclude that the assigned error otherwise meets the requirements of plain error.

Defendant contends that we should exercise our *Ailes* discretion to remedy that error. In that regard, defendant asserts that such correction would further "the ends

of justice," *Ailes*, 312 Or at 382 n 6—emphasizing the significant sentence imposed (100 months)—and also posits that there does not appear to have been a strategic basis for defense counsel's failure to alert the trial court to the error.

We conclude, however, that an exercise of discretion is not appropriate in this instance, because, in the totality of the circumstances, the failure to give the *Nelson*-prescribed instruction was unlikely to have affected the verdict. By way of informative distinction, it is useful to contrast the circumstances in this case—specifically, the nature of the evidence and of the defense—with those in *Gray*, where our exercise of *Ailes* discretion rested largely on our conclusion that the absence of a *Nelson* instruction was not harmless. 261 Or App at 131-32.

In *Gray*, the evidence and the defense theory of the case put the defendant's mental state with respect to forcible compulsion squarely at issue. There, at the time of the rape and first-degree sex abuse, the defendant and the complainant, A, were living together as a married couple. Although each testified to "drastically different versions of the encounter that precipitated the charges," 261 Or App at 122, in A's account, the defendant had put his hands around her neck—conduct which A acknowledged "had previously been accepted sexual behavior in their relationship." *Id.* Ultimately, the jury rendered a "mixed verdict," convicting the defendant of, *inter alia*, rape and first-degree sexual abuse, but acquitting on various other charges. *Id.* at 124-25. On appeal, the defendant asserted that, given *Nelson*, the trial court's failure to instruct as to the requisite culpable mental state with respect to the forcible compulsion element of the rape and sexual abuse charges constituted reversible plain error. *Id.* at 125. We agreed and, in so holding, based our exercise of *Ailes* discretion primarily on our agreement with the defendant's assertion that the instructed error was not harmless:

> "[E]ven if the jury believed A's versions of the events (which, as defendant points out, is questionable given the mixed verdict), a reasonable juror might have doubted whether defendant knew that he had subjected A to forcible

compulsion, particularly given A's testimony that she had, on previous occasions, allowed defendant to pull her hair and put his hands on her neck. Therefore, the absence of a specific instruction with respect to defendant's mental state cannot be said to have had little likelihood to have affected the verdicts."

*Id.* at 131 (internal quotation marks omitted).

Here, in contrast, there was no evidentiary basis from which the jury could find that defendant, in engaging in the charged conduct, subjected E to forcible compulsion but not find that defendant did so knowingly. In E's account—which the jury necessarily credited in finding forcible compulsion—after she had declined to give defendant oral sex, he grabbed her by the back of her head and forced his penis into her mouth. Unlike in *Gray*, nothing in the parties' history suggested that such conduct had "previously been accepted sexual behavior" from which defendant might, plausibly, have not known that he was subjecting E to forcible compulsion. The asserted plain error was harmless. *See State v. Digesti*, 267 Or App 516, 525, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (determining that trial court plainly erred under *Nelson* and *Gray*, but declining to exercise *Ailes* discretion because the error was harmless).

We therefore decline to exercise our *Ailes* discretion to correct the error. Accordingly, defendant's conviction on Count 1 is affirmed.

We turn, finally, to defendant's contention that the trial court concomitantly erred in its instructions on the *attempted* first-degree sodomy charge (Count 5), ORS 161.405(1) and ORS 163.405(1).[4] That charge was based on RB's allegation that defendant sexually assaulted her in December 2011, the specifics of which we need not discuss, given our disposition of this issue. Defendant asserts that the absence of an instruction on the requisite culpable

---

[4] ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." For ORS 163.405(1), establishing the crime of first-degree sodomy, *see* 271 Or App at 9 n 3.

mental state with respect to the element of forcible compulsion constitutes plain error under *Nelson*.[5]

However, we have never addressed the propriety of extending *Nelson*'s analysis into the context of an attempted sexual crime. It is unclear whether, or how, *Nelson*'s instructional requirement would apply to such crimes, which are dissimilar from completed crimes with respect to the elements of the state's proof. *See State v. Walters*, 311 Or 80, 84, 804 P2d 1164, *cert den*, 501 US 1209 (1991) (in attempt crimes, the state must prove that a defendant intentionally or knowingly engaged in conduct that constituted a "substantial step" towards commission of a crime); *State v. Fox*, 262 Or App 473, 477-78, 324 P3d 608, *rev den*, 356 Or 163 (2014) (where an attempted crime includes the element of forcible compulsion, the state must prove that a defendant, with the requisite intent, took a substantial step towards forcibly compelling the victim to engage in the act). Accordingly, the claimed error is not "obvious" because *Nelson*'s application to attempted sexual crimes is reasonably disputed, precluding "plain error" review. We affirm defendant's conviction as to Count 5.

Affirmed.

---

[5] With respect to Count 5, the trial court instructed the jury that "a person commits the crime of attempted sodomy in the first degree if the person intentionally attempts to engage in deviate sexual intercourse with another person and if the victim is subjected to forcible compulsion by the defendant." Further, and in pertinent part, the jury was instructed that the state was required to prove that "[defendant] intentionally attempted to have deviate sexual intercourse with [RB]" and that "[RB] was subjected to forcible compulsion by the defendant."

As with Count 1, there was no instruction as to defendant's mental state with respect to forcible compulsion, and defendant did not propose additional instructions or take exception to those instructions.