Submitted March 16, 2015, portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed March 16, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK ANTHONY BELEN,
*Defendant-Appellant.*

Marion County Circuit Court
12C47258; A154000

369 P3d 438

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin K. Galli, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

Defendant appeals the trial court's judgment, raising two assignments of error. In his first assignment of error, defendant asserts that the trial court committed plain error by failing to instruct the jury that, in order to convict him of first-degree sodomy, as alleged in Count 1 of the indictment, it had to find that he knowingly subjected the victim to forcible compulsion. In his second assignment of error, defendant asserts that the trial court committed plain error by ordering him to pay $8,000 in court-appointed attorney fees. As explained below, based on *State v. Nelson,* 241 Or App 681, 251 P3d 240 (2011), *rev dismissed,* 354 Or 62 (2012), and *State v. Gray,* 261 Or App 121, 322 P3d 1094 (2014), we conclude that the trial court plainly erred by failing to instruct the jury that it had to find that defendant knowingly subjected the victim to forcible compulsion, but, as in *State v. Ross,* 271 Or App 1, 349 P3d 620, *rev den,* 357 Or 743 (2015), we conclude that the error was harmless. In addition, we conclude that, under *State v. Coverstone,* 260 Or App 714, 320 P3d 670 (2014), and *State v. Mejia-Espinoza,* 267 Or App 682, 341 P3d 180 (2014), *rev den,* 357 Or 164 (2015), the trial court plainly erred by ordering defendant to pay $8,000 in attorney fees and it is appropriate for us to exercise our discretion to correct the error. Accordingly, we reverse the portion of the trial court's judgment requiring defendant to pay the court-appointed attorney fees, and we otherwise affirm.

The state indicted defendant for multiple crimes.[1] Count 1 of the indictment, which is the only count at issue on appeal, charged defendant with committing first-degree sodomy against the victim in violation of ORS 163.405, which is set out below. 277 Or App at 50. Specifically, the indictment alleged that defendant "unlawfully and knowingly, by

---

[1] The state indicted defendant for two counts of first-degree sodomy, ORS 163.405 (Counts 1 and 2); one count of first-degree sexual penetration, ORS 163.411 (Count 3); two counts of first-degree rape, ORS 163.375 (Counts 4 and 5); three counts of first-degree criminal mistreatment, ORS 163.205 (Counts 6-8); three counts of misdemeanor strangulation, ORS 163.187 (Counts 9, 10, and 12); one count of fourth-degree assault, ORS 163.160 (Count 11); and one count of first-degree aggravated animal abuse, ORS 167.322 (Count 13). Counts 1 through 5 involved the same victim.

forcible compulsion, cause[d] [the victim] to engage in deviate sexual intercourse."

Defendant and the victim were married at the time of the charged crimes. Count 1 was based on a particular occasion, when, according to the victim's testimony at defendant's jury trial, defendant "wanted to have sex and [the victim] didn't want to."[2] The victim told defendant "no, no, I don't want to right now, no." In response, defendant pushed the victim down face first onto their bed, stated "don't ever tell me no," and "forced himself anally." The victim also testified that she and defendant had never engaged in any type of sexual "role playing" involving such conduct; that is, she testified that she never said "no," when actually consenting to anal sex.

Defendant denied the victim's allegations. He testified that he never had "unwanted" sex with her, "never forced [himself] on her," and never "took advantage of her." When asked about the victim's testimony, he said that the incidents of forced sex that she described "never happened."

At the conclusion of defendant's trial, the trial court instructed the jury regarding first-degree sodomy as follows:

> "Oregon law provides that a person commits the crime of Sodomy in the First Degree if the person knowingly engages in deviate sexual intercourse with another person and if the victim is subjected to forcible compulsion by the defendant. In this case to establish the crime of Sodomy in the First Degree, the State must prove beyond a reasonable doubt the following four elements: The act occurred in Marion County, Oregon; the act occurred between January 1, 2010 and August 1, 2012; [defendant] knowingly had deviate sexual intercourse with [the victim]; and, [the victim] was subjected to forcible compulsion by the defendant."

Defendant did not take exception to that instruction.

---

[2] The indictment did not specify the incident upon which Count 1 was based, but, in closing argument, the prosecutor specifically told the jury that Count 1 was based on the above-described anal sex incident and that Count 2, the other sodomy count, was based on a separate oral sex incident. *See State v. Steltz*, 259 Or App 212, 218-20, 313 P3d 312 (2013), *rev den*, 354 Or 840 (2014) (treating state's identification of the incidents underlying different charges during closing argument and sentencing as an election).

The jury found defendant guilty of Count 1, among other crimes.[3] The trial court entered a judgment sentencing defendant to a total of 202 months in prison and six months in jail, and ordering him to pay $1,000 in fines and $8,000 in court-appointed attorney fees.[4] This appeal followed.

As mentioned, in his first assignment of error, defendant asserts that the trial court committed plain error by failing to properly instruct the jury regarding the elements of first-degree sodomy as alleged in Count 1 of the indictment. First-degree sodomy is defined by ORS 163.405, which provides, in part:

"(1)  A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a)  The victim is subjected to forcible compulsion by the actor[.]"

Relying on *Nelson*, 241 Or App 681, defendant argues that the "subjected to forcible compulsion" element of first-degree sodomy is an element that requires a culpable mental state. ORS 161.095(2) ("Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."); *State v. Simonov*, 358 Or 531, 537, 368 P3d 11 (2016) (an element is "material" for the purposes

---

[3] The jury found defendant guilty of one count of first-degree sodomy (Count 1); three counts of first-degree criminal mistreatment (Counts 6 through 8); and two counts of misdemeanor strangulation (Counts 9 and 10). The jury found defendant not guilty of one count of first-degree sodomy (Count 2); one count of first-degree sexual penetration (Count 3); two counts of first-degree rape (Counts 4 and 5); one count of fourth-degree assault (Count 11); one count of misdemeanor strangulation (Count 12), and one count of first-degree aggravated animal abuse (Count 13).

[4] The trial court sentenced defendant as follows: Count 1, first-degree sodomy: 100 months in prison, $8,000 in attorney fees, and a $200 fine; Count 6, first-degree criminal mistreatment: 30 months in prison and a $200 fine; Count 7, first-degree criminal mistreatment: 36 months in prison and a $200 fine; Count 8, first-degree criminal mistreatment: 36 months in prison and a $200 fine; Count 9, misdemeanor strangulation: 180 days in jail and a $100 fine; Count 10, misdemeanor strangulation: 180 days in jail and a $100 fine. The judgment states that the prison terms are to run consecutively to the jail terms and to each other.

of ORS 161.095 unless it relates "'solely to the statute of limitations, jurisdiction, venue' or similar matters" (quoting *State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978))).

In *Nelson*, we held that the "subjected to forcible compulsion" element in the first-degree rape and first-degree sexual abuse statutes, ORS 163.375 and ORS 163.427, "necessarily requires a culpable mental state." 241 Or App at 688 (internal quotation marks omitted). Accordingly, we held that the trial court in that case had erred by failing to instruct the jury that it had to find that the defendant, who had been charged with knowingly committing first-degree rape and first-degree sexual abuse, had knowingly subjected the victim to forcible compulsion. *Id.* at 689.[5]

Since *Nelson*, we have held that a trial court's failure to instruct a jury that it must find a culpable mental state with respect to a "subjected to forcible compulsion" element constitutes plain error. *Ross*, 271 Or App at 10; *Gray*, 261 Or App at 130. In *Gray*, which was decided after defendant's trial in this case, we explained that

> "the trial court is required to 'state to the jury all matters of law necessary for its information in giving its verdict.' ORCP 59 B; ORS 136.330(1) (providing that ORCP 59 B applies to criminal actions). Accordingly, the trial court must instruct the jury on all the elements of the charged crimes. [*State v.*] *Lotches*, 331 Or [455,] 472[, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001)] ('[A] jury must be instructed concerning the necessity of agreement on all material elements of a charge in order to convict.'). Consistently with that principle, because the 'subjected to forcible compulsion' element of first-degree rape and first-degree sexual abuse requires that the jury find that the defendant acted with a culpable mental state, *Nelson*, 241 Or App at 688, the trial court is required to instruct the jury that, to convict, it must determine that the state has proved beyond a reasonable doubt that defendant acted

---

[5] In *Nelson*, we noted:

"We need not decide in this case which culpable mental states apply to the forcible compulsion elements of first-degree rape and first-degree sexual abuse. That is because the state indicted defendant for those crimes referring solely to a 'knowing' mental state with respect to all material elements of the crimes."

241 Or App at 688.

with a culpable mental state in subjecting the victim to forcible compulsion. That legal point is 'obvious' and 'not reasonably in dispute.'"

261 Or App at 130.

Relying on *Nelson* and *Gray*, defendant in this case contends that the trial court committed plain error by failing to instruct the jury that it had to find that he knowingly subjected the victim to forcible compulsion, noting that the instruction the trial court gave to the jury in this case is identical to the instruction at issue in *Gray*. *See Gray*, 261 Or App at 124. In response, the state does not dispute either that it was required to prove a culpable mental state with respect to the "subjected to forcible compulsion" element or that the jury instruction that the trial court gave was incomplete under *Nelson* and *Gray*; instead, the state argues that the trial court did not plainly err by failing to instruct the jury regarding the required culpable mental state and that, even if the trial court did plainly err, we should not exercise our discretion to correct the error.

We may review an unpreserved error as an "error of law apparent on the record," ORAP 5.45(1) (authorizing review of errors apparent on the record), if three requirements are satisfied: (1) the error is one "of law"; (2) the error is "apparent," that is, "the legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the face of the record," in that "[w]e need not go outside the record or choose between competing inferences to find it[.]" *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (internal quotation marks omitted).

Under *Gray*, the trial court's failure to instruct the jury on all of the elements it needed to find in order to find defendant guilty—including that he knowingly subjected the victim to forcible compulsion—constitutes plain error. The trial court was required to instruct the jury on all of the elements of the charged crime, and its failure to instruct on the required culpable mental state for forcible compulsion was an error "of law." As we held in *Gray*, such an error with respect to a "subjected to forcible compulsion" element is "obvious" and "not reasonably in dispute." 261 Or App at 130 (internal quotation marks omitted). And, "[w]e need not

go outside the record or choose between competing inferences to find it"; the incomplete instruction is apparent on the record. *See Brown,* 310 Or at 355.

Relying on *State v. Gornick,* 340 Or 160, 130 P3d 780 (2006), the state contends that the error is not plain in this case because the record is subject to competing inferences. The state argues that, under *Gornick,* an error is not plain "when one available inference from the record is that the litigant chose not to raise the issue."[6] The state further argues that, here, defendant may have made a strategic choice not to object to the trial court's incomplete instruction. Specifically, the state argues, "Here, where defendant's defense was that the sexual acts never occurred, it is inferable that defendant chose not to seek an instruction that would have focused the jury's attention on the much more nuanced—and perhaps less comprehensible to the average juror—issue of whether he had the specific intent to forcibly compel the victim to submit to the contact."

The state's argument is unavailing. For purposes of plain error analysis, competing inferences "do not arise automatically, but must be plausible." *State v. Higgins,* 258 Or App 177, 181, 308 P3d 352 (2013), *rev den,* 354 Or 700 (2014) (citing *State v. Lovern,* 234 Or App 502, 512, 228 P3d 688 (2010)).

On this record, it is not plausible that defendant's failure to object to the erroneous instruction was a strategic

---

[6] In *State v. Lovern,* 234 Or App 502, 511-12, 512 n 7, 228 P3d 688 (2010), we noted that, in *Gornick,* the Supreme Court considered the state's "strategic choice" argument as part of determining whether the claimed error was apparent on the record. In *Gornick,* the asserted inference, if drawn, would lead to a conclusion that the trial court did not err. After *Gornick,* in *State v. Fults,* 343 Or 515, 523, 173 P3d 822 (2007), the Supreme Court—having assumed for purposes of that case that the asserted error was plain—addressed a similar argument concerning competing inferences as relevant to whether a reviewing court should exercise its discretion to review the error. In *Lovern,* when we addressed the state's "strategic choice" argument, we stated that we did so "regardless of whether it is more properly directed to the third plain error prerequisite or to the proper exercise of *Ailes* [*v. Portland Meadows, Inc.,* 312 Or 376, 382 n 6, 823 P2d 956 (1991),] discretion[,]" and we concluded that the asserted inference was not a plausible one in any event. 234 Or App at 512. Here, as in *Lovern,* because we conclude that the inference that the state asserts is not plausible, we need not determine whether it would more properly be considered as part of the exercise of our *Ailes* discretion.

choice. As to first-degree sodomy, the state requested, and defendant did not oppose, the delivery of Uniform Criminal Jury Instruction (UCrJI) 1606; rather, defendant supplemented the state's requested jury instructions with a list of his own requested uniform jury instructions. The trial court generally delivered the uniform instructions requested by the parties. However, it gave an outdated version of UCrJI 1606. Instead of delivering the then-current version of that instruction, which had been amended in December 2011 to correctly define the elements of first-degree sodomy in light of our decision in *Nelson*, the trial court delivered the prior version of UCrJI 1606, which omitted the mental-state element at issue in this case. *Compare* UCrJI 1606 (2009), *with* UCrJI 1606 (2011). Although the record reflects that the parties had the opportunity to review the jury instruction packet before the jury was instructed, there is nothing in the record to suggest that the delivery of the legally erroneous 2009 version of UCrJI 1606 resulted from anything other than an oversight by the trial court and the parties.[7] *See Higgins*, 258 Or App at 181 (rejecting state's argument that the defendant may have made a strategic choice not to object to admission of evidence on the ground that, "[t]he state's speculation aside, there is nothing in the record indicating that defendant made any kind of strategic choice not to object"); *State v. Drinkwater*, 231 Or App 6, 10, 217 P3d 1090 (2009), *rev den*, 348 Or 13 (2010) (rejecting the state's "strategic choice" argument where the state had "identified no plausible strategic reason for defendant to have failed to object").

Having concluded that the trial court plainly erred, we turn to the question of whether we should exercise our discretion to correct the error. In determining whether to correct a plain error, we consider several factors, including "the nature of the case; the gravity of the error; the ends

---

[7] The jury instructions that the trial court gave on the other charged sex crimes were also outdated; they did not specify that the jury needed to find a culpable mental state for the forcible compulsion element of each offense. Given that defendant and the victim both testified that they engaged in some consensual sexual conduct during the time period in which the sex crimes allegedly occurred, it is particularly unlikely that defendant would have made a strategic choice to not have the jury instructed that, to convict defendant of the charged crimes, it had to find that he knowingly subjected the victim to forcible compulsion.

of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). "We also consider whether the error was harmless—that is whether there was little likelihood that the error affected the verdict." *State v. Digesti*, 267 Or App 516, 524, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (citing *Gray*, 261 Or App at 131-32). We begin with harmlessness, because, in this case, that issue is dispositive.

We considered whether a trial court's failure to give a culpable mental state instruction for the forcible compulsion element was harmless in *Gray*, 261 Or App 121, and *Ross*, 271 Or App 1.

In *Gray*, we concluded that the failure to give the instruction was plain error and not harmless because, on the record in that case, it was possible that the jury could have found that the defendant engaged in the charged conduct—specifically, that he forcibly compelled the victim to submit to sexual intercourse and sexual contact—but that he did not do so knowingly. 261 Or App at 131-32. We based our conclusion on the fact that there was evidence in the record that the defendant and the victim had previously engaged in consensual sexual activity involving force. We agreed with the defendant's argument that,

> "even if the jury believed [the victim's] versions of the events (which, as defendant points out, is questionable given the mixed verdict), a reasonable juror might have doubted whether defendant knew that he had subjected [the victim] to forcible compulsion, particularly given [the victim's] testimony that she had, on previous occasions, allowed defendant to pull her hair and put his hands on her neck. Therefore, the absence of a specific instruction with respect to defendant's mental state cannot be said to have had little likelihood to have affected the verdicts."

*Id.* (internal quotation marks omitted). We additionally held that, "although defendant could have prevented the problem by simply requesting a further instruction, which militates against exercising our discretion, defendant's challenged

convictions are for serious felonies. Given the gravity of the error, we exercise our discretion to correct it." *Id.* at 132 (internal citations omitted).

In contrast, in *Ross*, we concluded that the trial court's failure to instruct on the requisite mental state as to forcible compulsion on a first-degree sodomy count was plain error, but harmless. 271 Or App at 12. In *Ross*, the victim had spastic diplegia, a form of cerebral palsy, and used a wheelchair. She testified that the defendant asked her to give him oral sex and, when she refused, he grabbed the back of her head with his hands and forcibly put his penis in her mouth and proceeded to force oral sex. The defendant contended that he had a consensual sexual relationship with the victim and denied that he had subjected her to forcible compulsion. *Id.* at 8-9. On appeal, we concluded that, although the trial court's incomplete jury instruction on the sodomy count at issue was plain error under *Nelson* and *Gray*, it was not appropriate for us to exercise our discretion to correct the error because the error was harmless. We explained that

> "there was no evidentiary basis from which the jury could find that defendant, in engaging in the charged conduct, subjected [the victim] to forcible compulsion but not find that defendant did so knowingly. In [the victim's] account—which the jury necessarily credited in finding forcible compulsion—after she had declined to give defendant oral sex, he grabbed her by the back of her head and forced his penis into her mouth. Unlike in *Gray,* nothing in the parties' history suggested that such conduct had 'previously been accepted sexual behavior' from which defendant might, plausibly, have not known that he was subjecting [the victim] to forcible compulsion. The asserted plain error was harmless."

*Id.* at 12. *See also Digesti*, 267 Or App at 525 (trial court's failure to instruct the jury that it had to find that the defendant had knowingly subjected the victim to forcible compulsion was harmless error where the defendant had prevented the victim from leaving a bathroom and touched her, over her objections and despite her efforts to leave).

This case is akin to *Ross*. In order to have found the forcible compulsion element for Count 1, the jury necessarily

must have credited the victim's testimony that defendant pushed her down face first onto the bed and "forced himself anally" upon her. The victim testified that she and defendant had never engaged in any consensual sexual activity involving such force, and defendant did not testify otherwise. Thus, unlike in *Gray*, defendant's testimony did not provide an "evidentiary basis from which the jury could find that defendant, in engaging in the charged conduct, subjected [the victim] to forcible compulsion, but did not find that defendant did so knowingly." *Ross*, 271 Or App at 12. Accordingly, we conclude, based on these facts, that the trial court's instructional error was harmless.

In his second assignment of error, defendant asserts that the trial court committed plain error by ordering him to pay court-appointed attorney fees, because the record is silent as to whether he "is or may be able" to pay those fees. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them."); *see also Coverstone*, 260 Or App at 716 (holding that it is plain error for a trial court to require a defendant to pay court-appointed attorney fees in the absence of legally sufficient evidence that the defendant is or may be able to pay the amount imposed). As noted, the trial court sentenced defendant to 202 months in prison, and imposed $1,000 in fines and $8,000 in court-appointed attorney fees.

The state, for its part, argues that the record contains sufficient evidence to support the imposition of attorney fees because there was evidence in the record that defendant had worked previously. In support of its argument, the state points to evidence that, approximately five years before sentencing, defendant had worked in a grocery store and, at some later point in time, he had worked for a windshield cleaning company. The state also argues that, even if the trial court plainly erred, we should not exercise our discretion to correct the error.

In *Mejia-Espinoza*, 267 Or App 682, we faced facts similar to those presented here. In that case, the defendant

was convicted of several sex offenses. The trial court sentenced the defendant to 200 months in prison and ordered him to pay $6,000 in court-appointed attorney fees. The defendant failed to object to the attorney fees at trial, but asked that we exercise our discretion to correct the error on appeal. In response, the state argued that the trial court did not plainly err, because there was evidence in the record that the defendant had previously been employed as a field worker picking fruit and as a firefighter. *Id.* at 683.

On appeal, we concluded that the trial court plainly erred, because the record did not contain sufficient evidence to support a finding that the defendant was or might be able to pay the court-appointed attorney fees. Specifically, we stated that "[t]here [was] no evidence that, as of the time of sentencing, defendant possessed assets sufficient to satisfy the award of fees or that he would receive income during his lengthy incarceration that could be applied toward the obligation." *Id.* at 684.

We further determined that it was appropriate for us to exercise our discretion to correct the error. First, we noted that the error was grave because $6,000 was a "substantial sum." *Id.* Second, we stated that "this is not a case in which the trial court could have made the necessary findings regarding ability to pay if the issue had been brought to its attention," because "there was no evidence that defendant was able to, or might be able to, pay the attorney fees." *Id.* at 685.

Here, we similarly conclude that the trial court plainly erred in ordering defendant to pay $8,000 in attorney fees. The state bears the burden of proving that a defendant "is or may be able to pay" attorney fees, *State v. Kanuch*, 231 Or App 20, 24, 217 P3d 1082 (2009), and, here, the state presented no evidence that defendant possessed "assets sufficient to satisfy the award of fees or that he would receive income during his lengthy incarceration that could be applied toward that obligation." *Mejia-Espinoza*, 267 Or App at 684; *see also State v. Tiscornia*, 272 Or App 753, 755, 358 P3d 326 (2015) (evidence that the defendant had worked cleaning houses a couple of years prior to sentencing did not give rise to "any reasonable inference about [the]

defendant's financial resources or employability at the time of sentencing or in the future"); *State v. Ramirez-Hernandez,* 264 Or App 346, 348, 332 P3d 338 (2014) (trial court plainly erred in imposing attorney fees "in light of the lack of any post-arrest evidence of defendant's ability to earn money to pay the attorney fee award," because "a court cannot impose fees based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future" (internal quotation marks omitted)).

Additionally, for the reasons identified in *Mejia-Espinoza,* we exercise our discretion to correct the error. As in *Mejia-Espinoza,* the error is grave—$8,000 is a "substantial sum," especially considering defendant's 202-month prison term—and, this is not a case in which it is clear that the trial court could have made the necessary findings regarding defendant's ability to pay if the issue had been brought to its attention, because the record contains no evidence that defendant was able to, or might be able to, pay the attorney fees. *See Mejia-Espinoza,* 267 Or App at 684-85; *see also Tiscornia,* 272 Or App at 755-57 (exercising discretion to correct error imposing $980 in attorney fees where the record contained no evidence of the defendant's financial resources at sentencing and the defendant was sentenced to 36 months' imprisonment); *State v. Diaz-Ruiz,* 267 Or App 419, 420, 340 P3d 752 (2014), *rev den,* 357 Or 143 (2015) (exercising discretion to correct error imposing $12,500 in attorney fees where the record contained no evidence of the defendant's financial resources and the defendant was sentenced to 300 months' imprisonment); *State v. Delgado-Juarez,* 263 Or App 706, 707-08, 330 P3d 1248, *rev den,* 355 Or 880 (2014) (exercising discretion to correct error imposing $1,200 where the record contained no evidence of the defendant's financial resources and the defendant was sentenced to 298 months' imprisonment); *cf. State v. Baco,* 262 Or App 169, 171, 324 P3d 491, *rev den,* 355 Or 751 (2014) (declining to exercise discretion to correct plain error in imposing $500 in attorney fees given that the defendant's probationary sentence would not prevent him from working).

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.