Argued and submitted March 10, 2015, affirmed November 9, 2016, petition for review denied April 13, 2017 (361 Or 350)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS EARL WALDBILLIG,
*Defendant-Appellant.*

Deschutes County Circuit Court
10FE1396MS, 10FE1180MS;
A151450 (Control), A151451, A151453

386 P3d 51

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Services. Nicholas Earl Waldbillig filed the supplemental brief *pro se.*

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

In this consolidated criminal appeal, defendant challenges his convictions for second-degree kidnapping, coercion, and two counts each of first-degree sodomy and first-degree sexual abuse.[1] He asserts 10 assignments of error. We write to address only defendant's second and third assignments of error, and reject the rest without written discussion.[2]

In his second assignment, defendant asserts that the trial court's jury instructions failed to inform the jury that to convict defendant of first-degree sodomy, the state had to prove that he *knowingly* subjected the victim to forcible compulsion. Similarly, in his third assignment, he claims that the jury instructions failed to inform the jury that to convict him of first-degree sexual abuse, the state had to prove that he *intentionally* subjected the victim to forcible compulsion. Although defendant maintains that he properly preserved those assignments, he urges us to correct the error as plain error if we disagree. The state asserts that defendant failed to preserve his second and third assignments and that, to the extent the court's instructions are plain error, we should decline to exercise our discretion to correct the error. We conclude that defendant failed to preserve his second and third assignments of error but agree that the court's instructions constitute plain error. Nevertheless, we decline to exercise our discretion to correct the error because the error was harmless. Therefore, we affirm.

We state the relevant background facts in the light most favorable to the state. *State v. Washington,* 355 Or 612, 614, 330 P3d 596 (2014) ("Because the jury found defendant guilty, we view the evidence presented at trial in the light most favorable to the state."). Because defendant's second and third assignments relate only to his convictions for first-degree sodomy and first-degree sexual abuse, we include only the facts that are necessary to our analysis of those assignments.

---

[1] A jury found defendant guilty of additional crimes. Defendant, however, does not challenge the convictions entered for those crimes.

[2] We also reject without written discussion the assignment of error made by defendant in his *pro se* supplemental brief.

Defendant and the victim had dated for several months before the night—September 28, 2010—on which the events of this case occurred. During their relationship, they were sexually active, and the victim agreed to "at least try" anal intercourse with defendant at some point. However, the one time she did so at defendant's urging, the act caused her pain and she started crying and asked defendant to stop. He failed to do so, later telling her that he had not heard her request. The victim believed she had satisfied her agreement to try anal intercourse.

Subsequently, the victim told defendant that she no longer wanted to date him and that they should just be friends. Defendant "kept pestering" the victim to get back together and "wouldn't leave [the victim] alone." After the victim returned home from work on the evening of September 28, 2010, she parked her car in front of her house. She observed defendant exit his car; he then entered the front passenger side of her car. They talked for a "long time" and the conversation started out "[j]ust like all the other times that he wanted to get back together and I kept telling him no. Exactly the same." Defendant told the victim that her ex-boyfriend (with whom the victim was still in contact) had "cheated on [the victim] with [her best friend]." As the conversation continued, the victim became upset and started communicating through text messages and telephone calls with her ex-boyfriend and her best friend. Defendant grew angrier, and while the victim was on the phone with her ex-boyfriend, defendant pulled out a gun and told the victim to tell her ex-boyfriend to "fuck off" and that she "didn't want to talk to him again." After the victim did so and ended the call, defendant took her phone and told her that if she screamed "he would shoot [her] and then shoot anyone else who came out."

Defendant told the victim that they needed to move to his car because "he wanted to have anal sex because that was one thing that [her ex-boyfriend] hadn't done." He informed the victim that if she screamed he would shoot her and then shoot her father. Defendant told the victim that he wanted to go to "the BLM," which the victim understood to be an isolated place where they had previously had sex in his car. The victim convinced defendant to go to Juniper Park,

which was closer and in a more populated area. Defendant drove to a parking lot at Juniper Park and parked. He asked the victim "Why are you so jumpy?" and put the gun down to his side and tried to calm the victim down. He then grabbed the gun, put it to his head, "tried firing it," and told the victim that it was "fake." Defendant put the gun down again and "still wanted sex" because the victim had "made a promise and [she] should keep it." Then, despite the victim's protestation, defendant anally penetrated the victim. However, a security officer arrived and shined a spotlight on defendant's car. Defendant got out of the car, and spoke with the security guard, who left after a few minutes without speaking with the victim. The victim tried, but could not open the passenger side door of defendant's car from the inside.

After the security guard left, defendant indicated that he would take the victim home. However, he turned off the road and parked in a dirt lot next to railroad tracks, informing the victim that "we were going to finish." After parking the car, defendant aggressively unbuckled the victim's seatbelt and told her to "get in the back and we were going to finish because [she] needed to keep the promise" to engage in anal intercourse. Defendant again forcibly penetrated the victim anally. Afterwards, he drove her home and told her that, if she went to the police, his friends would come after her, her father, and her best friend.

The state indicted defendant of, among other crimes, two counts of first-degree sodomy and two counts of first-degree sexual abuse on the theory that he subjected the victim to deviate sexual intercourse and sexual contact through forcible compulsion. See ORS 163.405 (first-degree sodomy is committed when a person engages in deviate sexual intercourse with another person and the victim is subject to forcible compulsion by the actor); ORS 163.427 (first-degree sexual abuse is committed when a person subjects another person to sexual contact and the victim is subject to forcible compulsion by the actor).

The case proceeded to trial, and, at the close of evidence, the state submitted proposed jury instructions to the trial court. As relevant to this appeal, the instructions for

first-degree sodomy and first-degree sexual abuse mimicked an outdated version of the relevant Uniform Criminal Jury Instructions (UCrJI).[3] The proposed instruction for first-degree sodomy (UCrJI 1606) provided:

"Oregon law provides that a person commits the crime of sodomy in the first degree if the person knowingly engages in deviate sexual intercourse with another person and if the victim is subjected to forcible compulsion by the defendant.

"In this case, to establish the crime of sodomy in the first degree, the state must prove beyond a reasonable doubt the following four elements:

"(1) The act occurred in Deschutes County, Oregon;

"(2) The act occurred on or about September 29[], 2010;

"(3) [Defendant] knowingly had deviate sexual intercourse with [the victim]; and

"(4) [The victim] was subjected to forcible compulsion by the defendant."

Similarly, the instruction for first-degree sexual abuse (UCrJI 1611) provided:

"Oregon law provides that a person commits the crime of sexual abuse in the first degree when the person intentionally subjects another person to sexual contact and the victim is subjected to forcible compulsion by the actor.

"In this case, to establish the crime of sexual abuse in the first degree, the state must prove beyond a reasonable doubt the following four elements:

"(1) The act occurred in Deschutes County, Oregon;

"(2) The act occurred on or about September 29[], 2010;

"(3) [Defendant] intentionally subjected [the victim] to sexual contact; and

---

[3] In 2011, the Oregon State Bar Committee on Uniform Criminal Jury Instructions revised the UCrJIs for first-degree sodomy (UCrJI 1606) and first-degree sexual abuse (UCrJI 1611) in response to *State v. Nelson*, 241 Or App 681, 687-88, 251 P3d 240 (2011), *rev dismissed as improvidently allowed*, 354 Or 62 (2013).

"(4)    [The victim] was subjected to forcible compulsion by [d]efendant."

On appeal, defendant asserts that those instructions were erroneous because they did not tell the jury that it had to find beyond a reasonable doubt that defendant had *knowingly* subjected the victim to forcible compulsion to convict him of first-degree sodomy and failed to inform the jury that it had to find beyond a reasonable doubt that defendant had *intentionally* subjected the victim to forcible compulsion to convict him of first-degree sexual abuse. That is, the instructions failed to inform the jury that it must find a culpable mental state with respect to the "subjected to forcible compulsion" element of the charged crimes.

Defendant is correct that the instructions were erroneous. In a decision issued about one year before the trial in this case, we held that the "subjected to forcible compulsion" element in the first-degree rape and first-degree sexual abuse statutes "necessarily requires a culpable mental state." *State v. Nelson*, 241 Or App 681, 688, 251 P3d 240 (2011), *rev dismissed as improvidently allowed*, 354 Or 62 (2013). Accordingly, we explained in *Nelson* that the trial court had erred when it refused to give an instruction that the jury had to "find beyond a reasonable doubt that defendant had *knowingly* subjected the victim to forcible compulsion in order to convict him of first-degree rape and first-degree sexual abuse."[4] *Id.* at 685, 689 (emphasis in original). In subsequent cases we have held that the failure to instruct the jury that the state had to prove a culpable mental state for the "subject to forcible compulsion" element is "plain error." *State v. Gray*, 261 Or App 121, 130, 322 P3d 1094

---

[4] In *Nelson*, we did not decide which culpable mental state applied to the forcible compulsion elements of first-degree rape and first-degree sexual abuse because the state had indicted the defendant referring solely to a "knowing" mental state. In those circumstances, the state was required to prove that the defendant acted with a "knowing" mental state with respect to all material elements of the crimes. 241 Or App at 688. Similarly here, given the manner in which the state indicted defendant and our ultimate resolution of the appeal, we need not decide which culpable mental states apply to the forcible compulsion elements of first-degree sexual abuse and first-degree sodomy. Given the indictment in this case, under *Nelson*, the state was required to prove a knowing mental state with regard to the forcible compulsion element for first-degree sodomy, and an intentional mental state with regard to the forcible compulsion element for first-degree sexual assault.

(2014); *see also State v. Belen*, 277 Or App 47, 54, 369 P3d 438 (2016) (same); *State v. Ross*, 271 Or App 1, 8, 349 P3d 620, *rev den*, 357 Or 743 (2015) (same).

The state claims that defendant failed to preserve any error because his objections to the instructions were substantively different than the position he asserts on appeal. Further, although the state acknowledges that the error is "probably" plain under our case law, it contends that we should decline to exercise our discretion to correct the error because any error was harmless.

Given that context, we begin with preservation. Because it is essential to our analysis, we quote the colloquy regarding the first-degree sexual abuse and first-degree sodomy jury instructions at length.

"THE COURT: Sodomy in the First Degree, any problems with that?

"[DEFENSE COUNSEL]: No objection.

"THE COURT: Sex Abuse in the First Degree, any problems?

"[DEFENSE COUNSEL]: Well, as I'm reading both of these, I had a question in my mind in 1606 [first-degree sodomy]. Now it's come up again in 1611 [first-degree sexual abuse].

"You know, as the—I don't have the general instruction in front of me. They're technically correct, but 3 and 4, one could read that element 3 in * * * 1606, a person had deviate sexual intercourse with [the victim] and [the victim] was subject to forcible compulsion by the defendant.

"As it reads in the indictment is actually a better way of saying it, which is that the person did unlawfully—let's see, knowingly had deviate sexual intercourse with [the victim]—sorry. I'm reading the wrong one.

"THE COURT: Which—

"[DEFENSE COUNSEL]: By forcible compulsion.

"THE COURT: —are you on, Sodomy in the First Degree?

"[DEFENSE COUNSEL]: Yeah. Sodomy in the First Degree. By forcible compulsion. I mean, some jurors may

not connect the two. We can argue it in closing, but it's not a—it's not clear.

"THE COURT:   I don't understand the—I don't understand what you're saying. This is straight out of the—

"[DEFENSE COUNSEL]:   Three—1606, '[Defendant] knowingly had deviate sexual intercourse with [the victim].'

"THE COURT:   'And.'

"[DEFENSE COUNSEL]:   'And.'

"THE COURT:   Well, it says right above, 'In this case, to establish the crime of sodomy in the first degree, the State must prove beyond a reasonable doubt the following four elements.'

"[DEFENSE COUNSEL]:   I'm saying they can disconnect 3 and 4. 4 can be disconnected from 3. A person can subject somebody to forcible compulsion to do anything. It doesn't reference back to the deviate sexual intercourse was because she was subjected to forcible compulsion.

"* * * * *

"THE COURT:   Well, 'and' means conjunctive. And to me, that—all's that means is that he has to prove all four of them. That's all it means. Beyond a—the State has to prove that beyond a reasonable doubt.

"* * * * *

"All right. So now I'm on 1611. This is Count 2, sodomy in the first degree. Count 3 is sex abuse in the first degree. Do you have any problems with that?

"[DEFENSE COUNSEL]:   Same objection. Otherwise, nothing else."

Based on that colloquy, we conclude that defendant failed to preserve his second and third assignments of error. Defendant's objection to the trial court is substantively different than the argument he makes on appeal. At no time did he alert the trial court to the fact that the instructions failed to inform the jury that the state had to prove a culpable mental state for the "subject to forcible compulsion" element of the crimes. Rather, defendant asserted that the instruction did not expressly connect the deviate sexual intercourse to the element of forcible compulsion. That is, his

point was that "[a] person can subject somebody to forcible compulsion to do anything. It doesn't reference back to the deviate sexual intercourse was because she was subjected to forcible compulsion." In other words, in defendant's view, the instruction failed to require the jury to find that defendant had subjected the victim to forcible compulsion in conjunction with subjecting the victim to deviate sexual intercourse or sexual contact. Accordingly, defendant's objections to the jury instructions did not "provide the trial court with an explanation of his * * * objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

Defendant, acknowledging that he may not have done enough to preserve the error, urges us to conclude that the error was plain, and requests that we exercise our discretion to correct it. As noted, we have held that instructions such as the ones given in this case qualify as plain error. 282 Or App at 90. The state concedes as much in this case, and we agree that the instructions given qualify as plain error.

However, our conclusion that the court plainly erred does not end our analysis "because not all plain error is reversible error." *Gray*, 261 Or App at 130. We must decide whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). In making that determination, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6.

Our recent cases addressing whether to exercise our discretion to correct plain instructional error on the "subject

to forcible compulsion" element have generally turned on whether the error was harmless—that is, whether there was little likelihood that the error affected the verdict. *Gray*, 261 Or App at 131-32. In evaluating whether the error is harmless, we have focused on whether there is an evidentiary basis from which the jury could find that the defendant, in engaging in the charged conduct, did not have the required culpable mental state with respect to forcible compulsion. *Belen*, 277 Or App at 57. If so, the error is not harmless.

For example, in *Gray*, a jury convicted defendant of first-degree rape and first-degree sexual abuse based on evidence that the victim awoke to the defendant pressing his erect penis against her anus, and when she protested, defendant forced the victim onto her back, got on top of her, put his hands around the victim's neck, and sexually penetrated her. 261 Or App at 122. There was also evidence introduced at trial that the defendant and the victim had previously experimented in their sexual relationship, and that anal sex, hair pulling, and defendant putting his hands on her neck had previously been accepted sexual behavior between them. *Id.* After concluding that the court's failure to instruct the jury that it had to find a culpable mental state with respect to the "subject to forcible compulsion" element was plain error, we concluded that we should exercise our discretion to correct the error because, in addition to the gravity of the convictions, the error was not harmless. *Id.* at 132. We agreed with the defendant that, even if the jury believed the victim's version of events, "a reasonable juror might have doubted whether defendant knew that he had subjected [the victim] to forcible compulsion, particularly given [the victim's] testimony that she had, on previous occasions, allowed defendant to pull her hair and put his hands on her neck." *Id.* at 131.

In contrast, in other cases, we have concluded that the instructional error was harmless because there was no evidentiary basis from which the jury could have found that the defendant subjected the victim to forcible compulsion, but did not do so with the required culpable mental state. In *State v. Digesti*, 267 Or App 516, 525, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015), the evidence of forcible compulsion was that, while "groping" the 15-year-old victim, the

defendant "pressed his foot against the bathroom door, such that [the victim] could not open the door and leave the bathroom for roughly four to five minutes, despite her repeated attempts to do so." In those circumstances, we concluded that "there is little likelihood that the jury would find that defendant physically prevented [the victim] from leaving the bathroom for roughly four to five minutes, overcoming by force her repeated attempts to open the door and leave and compelling her to submit to sexual contact against her will, without intentionally doing so." *Id.* Accordingly, we declined to exercise our discretion to correct the instructional error because the error was harmless. *Id.*

Similarly, in *Ross*, the victim's account of a sexual assault—which the jury had necessarily credited in finding forcible compulsion—was that after she declined to give the defendant oral sex, he grabbed her by the back of her head and forced his penis into her mouth. 271 Or App at 12. We noted that, "[u]nlike in *Gray*, nothing in the parties' history suggested that such conduct had 'previously been accepted sexual behavior' from which defendant might, plausibly, have not known that he was subjecting [the victim] to forcible compulsion." *Id.* Accordingly, we concluded that the plain error in failing to instruct the jury as to the culpable mental state for the "subject to forcible compulsion" element was harmless, and we declined to exercise our discretion to correct it. *Id.*; *see also Belen*, 277 Or App at 57 (instructional error was harmless where the jury necessarily credited the victim's testimony that the defendant "forced himself" on her and there was evidence that she and the defendant had never engaged in any consensual sexual activity involving such force).

Here, defendant argues that the ends of justice and the gravity of the error compel us to exercise our discretion to correct the error. He also asserts that the error was not harmless because "[t]here was evidence that defendant was surprised by [the victim's] reaction during the encounter and, in response, attempted to illustrate that the gun was not real." Further, he asserts that because the jury verdicts were not unanimous, the verdicts demonstrate that all jurors did not find the state's version of the incident to be entirely credible and "it cannot be said that the errors in the

jury instructions \* \* \* had little likelihood of affecting the verdict."

With respect to the nonunanimous jury verdicts, whether all jurors found defendant guilty is irrelevant to our analysis, because *enough* jurors credited the victim's version of defendant's conduct to find defendant guilty (and therefore, necessarily that defendant subjected the victim to forcible compulsion). Our focus in evaluating whether the error was harmless is on whether the error had little likelihood of affecting the *verdict*. Accordingly, we must evaluate the potential effect of the error on the jurors who necessarily credited the victim's account as to forcible compulsion—*i.e.,* those who voted to find defendant guilty. When we do so in this case, just as in *Digesti* and *Ross*, we conclude that the asserted plain error was harmless. That is so because there was no evidence regarding the parties' history (or otherwise) from which the jury could find that defendant, in engaging in the charged conduct, subjected the victim to forcible compulsion but did not do so knowingly (first-degree sodomy) or intentionally (first-degree sexual abuse).[5] That is, unlike *Gray*, there is no evidence that the victim and defendant ever engaged in consensual sexual activity that involved the type of forceful conduct that the jury necessarily found defendant to have engaged in here. Accordingly, the error is harmless and we decline to exercise our discretion to correct the instructional plain error.

Affirmed.

---

[5] Defendant does not make any distinction on appeal between the intentional mental state with respect to first-degree sexual abuse and the knowing mental state with respect to first-degree sodomy. And for purposes of our harmlessness analysis, neither do we.