LAGESEN, J.
*346 Defendant appeals from a judgment of conviction for 10 counts of first-degree rape, ORS 163.375, and 10 counts of coercion, ORS 163.275. He seeks reversal of the rape convictions, contending that the trial court plainly erred when it did not instruct the jury that it was required to find that he knowingly subjected the victim to forcible compulsion, as required under State v. Nelson , 241 Or.App. 681, 251 P.3d 240 (2011), rev. dismissed , 354 Or. 62, 308 P.3d 206 (2012). Although defendant is correct that the trial court plainly erred, we decline to exercise our discretion to correct that error because it was harmless. See State v. Belen , 277 Or.App. 47, 54-57, 369 P.3d 438 (2016) (declining to correct trial court's erroneous failure to instruct the jury regarding the mental state element of first-degree rape where error was harmless). We therefore affirm.
Defendant's crimes were against his former student, an immigrant whose native language is Chuukese (a language of Micronesia). He first met the victim when she was a 14-year-old high school student. After she had graduated from high school, defendant came up with a scheme that would leave the victim no choice but to have sex with him. He did so by convincing her that she had to make sex tapes with him to spare herself, her family, and defendant from harm or death from a cartel. Among other things, defendant, pretending to be someone named George Lopez, sent text messages and Facebook messages to the victim. In the messages, "Lopez" threatened to kill the victim and defendant. Defendant then told the victim that "Lopez" was threatening him, that "Lopez" was taking defendant's money, and that the only way to stop "Lopez" was for the victim to make sex videos with defendant. Specifically, defendant told the victim that they needed to make two videos per month for two years to satisfy "Lopez" and his cartel. The victim believed the threats to be real and complied with the demands. She did this despite not wanting to have sex with defendant and would not have done so absent the threats. As a result, defendant made videos with the victim from November 2013 to August 2014, making on average two videos per month. The victim had sex with defendant only when making the videos, or when she believed them *347 to be making the videos. The victim stopped making the videos upon getting a message from "Lopez" containing a Chuukese word that she had taught to defendant. The use of Chuukese alerted her to the fact that defendant was pretending to be "Lopez." A family member of the victim later reported defendant to police.
Based on that conduct, defendant was charged with one count of first-degree rape *371 and one count of first-degree coercion for each month in which a video was made, for a total of 10 counts of first-degree rape and 10 counts of coercion. The state's theory, as laid out in its closing argument, was that defendant committed coercion each time the victim had sex with him because she did so based on the purported threats by "Lopez," and that the same conduct also constituted rape by forcible compulsion. The state argued to the jury:
"So, basically what you're going to hear is that there are 10 counts of RAPE IN THE FIRST DEGREE and 10 counts of COERCION. A count for rape and a count for coercion for every month from November through August of 2014. That is one time in each month between November and August of 2014 [that] the Defendant coerced and raped [the victim].
"Coercion, what does that mean. You're going to be instructed that you have [to find] beyond a reasonable doubt that the Defendant knowingly compelled [the victim] to engage in conduct which [the victim] had a right to legally abstain from, and that he compelled her or induced her-was the compelling or inducing was accomplished by instilling in fear in [the victim] that if she didn't engage in the conduct that she-that physical injury could come to herself or another person.
"Coercion doesn't require that the conduct be sex. It just happens to be in this case.
"[The victim] has a legal right to say no to sexual intercourse. And if she is induced to engage in sex by threats of fear, or threats that somebody is going-or a fear that somebody is going to be harmed if she doesn't that is coercion.
"But because it happens to be sex that we're talking about in this case it also happens to be rape. You're going to be instructed that in order to find the Defendant guilty of rape you must find that he knowingly had sexual *348 intercourse with her. There is no dispute by anyone in this Court that that happened. And that [the victim] was subjected to forcible compulsion by the Defendant.
"And you're going to be further instructed that forcible compulsion is to compel by either physical force, which we do not have in this case, or a threat, expressed or implied that places a person in fear of immediate or future death or physical injury to self or another person."
(Capitalization in original.)
Defendant's defense was that he and the victim had been engaged in a consensual role-playing game and that the victim's claims to the contrary were not credible. Defendant asserted that, at a minimum, he did not knowingly compel the victim to have sex. According to defendant, he did not know that the victim thought the threats from "Lopez" and the "cartel" were real, and he thought that she understood that they were playing a game. He argued to the jury:
"When you go back into the jury room and you cannot put aside the idea that maybe she's trying to protect herself or her reputation with her family, but I would submit to you that that is reasonable doubt. If you go back into the jury room, and you think it's possible that [defendant], because of the wildness of the stories, and the things that [the victim] said to him did not understand that she didn't think this was a game. I would submit to you that that's reasonable doubt on whether he knowingly forcibly coerced her. Whether he knowingly compelled and induced her."
The jury rejected defendant's theory and, when it credited the victim's version of events, unanimously found defendant guilty on all counts.
On appeal, defendant points out that the jury instructions on the elements of first-degree rape did not inform the jury that it had to find that defendant knowingly subjected the victim to forcible compulsion, as required by our decision in Nelson , 241 Or.App. at 689, 251 P.3d 240. Defendant neither objected to the instructions that were given nor requested that the jury be instructed consistently with Nelson . He argues, however, that the omission of an instruction constitutes plain error under our case law. He argues further *349 that we should exercise our discretion to correct that error because, in his view, there is some likelihood that the *372 jury would not have convicted him of rape had it properly been instructed on the mental state element. Without such an instruction, defendant asserts that there is some likelihood that the jury convicted him of rape even if it credited his testimony that he thought the victim understood that they were playing a game.
In response, the state does not concede that the trial court plainly erred. However, the state acknowledges that we previously concluded that the omission of the instruction required under Nelson constitutes plain error. The state primarily argues that, even if the trial court plainly erred, we should not exercise our discretion to correct that error in this case, for a number of reasons, including that any error was harmless.
"To be 'plain' the error must (1) be an error of law; (2) be obvious, meaning that the legal point is not reasonably in dispute; and (3) appear on the record." Dept. of Human Services v. H. F. E. , 288 Or.App. 609, 611, 410 P.3d 1108, 1108 (2017) (citing ORAP 5.45(1) ; State v. Vanornum , 354 Or. 614, 629, 317 P.3d 889 (2013) ). As to the legal point here, we have routinely held that a trial court's failure to instruct the jury that it must find that a defendant knowingly subjected a victim to forcible compulsion as required by Nelson is plain error. State v. Waldbillig , 282 Or.App. 84, 92, 386 P.3d 51 (2016), rev. den. , 361 Or. 350, 393 P.3d 1179 (2017) ; Belen , 277 Or.App. at 52-53, 369 P.3d 438 ; State v. Ross , 271 Or.App. 1, 349 P.3d 620, rev. den. , 357 Or. 743, 361 P.3d 608 (2015) ; State v. Gray , 261 Or.App. 121, 322 P.3d 1094 (2014). In view of that precedent, the trial court's failure to deliver the required instruction here constitutes plain error.
The remaining question is whether to exercise our discretion to correct that plain error. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 382 n. 6, 823 P.2d 956 (1991). One circumstance in which we will not and cannot exercise our discretion to correct a plain error is when that error is harmless, that is, when there is little likelihood that the error affected the jury's verdict. Waldbillig , 282 Or.App. at 93, 386 P.3d 51 ; Belen , 277 Or.App. at 57, 369 P.3d 438. If an error-whether preserved *350 or unpreserved-is harmless, the Oregon Constitution requires that we affirm the judgment. Specifically, under Article VII (Amended), section 3, of the Oregon Constitution, "this court must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment 'was such as should have been rendered in the case.' " State v. Davis , 336 Or. 19, 28, 77 P.3d 1111 (2003) (quoting Or. Const., Art. VII (Amended), § 3).
Here, we are persuaded that the trial court's error was harmless. That is because the jury's verdict on the coercion counts demonstrates that the jury necessarily discredited defendant's assertion that he did not know that the victim did not understand it was all "just a game," and affirmatively found to the contrary that defendant knew that he was compelling the victim to engage in sex through the threats of harm that he was manufacturing.
The statutory definition of forcible compulsion is found in ORS 163.305(2) :
" 'Forcible compulsion' means to compel by:
"(a) Physical force; or
"(b) A threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."
Although the jury instructions on the elements of first-degree rape did not tell the jury that it had to find that defendant knew that he was subjecting the victim to forcible compulsion, the trial court's instructions on the coercion counts did require the jury to find that defendant knew that he was compelling the victim to have sex with him. With respect to each count of coercion, the jury was instructed:
"Oregon law provides that a person commits the crime of COERCION when the person compels or induces another person to engage in conduct to which the other has a legal right to abstain by means of instilling in the other person a fear that if the other person refrains from the conduct *373 compelled or induced, or engages in conduct contrary to the compulsion or inducement the person or another will unlawfully cause a physical injury to some person. *351 "In this case to establish the crime of COERCION the State must prove beyond a reasonable doubt the following three elements.
"1. The act occurred on or between [the relevant dates].
"2. [Defendant] knowingly compelled or induced [the victim] to engage in conduct in which [the victim] had a legal right to abstain. And
"3. This compelling or inducing was accomplished by means of instilling in [the victim] a fear that if [the victim] refrained from the conduct compelled or induced [defendant] or another would unlawfully cause a physical injury to some person."
(Capitalization in original; emphasis added.)
Given those instructions and the state's theory of the case (that defendant was committing coercion by compelling the victim to have sex with him through his threats), the jury necessarily found that defendant knew that he was compelling the victim to have sex with him through the threats of physical injury that he was making when it found defendant guilty on all counts of coercion. In other words, the jury did not believe defendant's testimony that he did not know that the victim did not understand that the threats from "Lopez" were not real. Consequently, had the jury also been instructed that it had to find that defendant knowingly subjected the victim to forcible compulsion to convict him of rape for the same conduct, it undoubtedly would have reached the same conclusion. Similar to the circumstances in both Waldbillig and Belen , in which we concluded that the trial court's failure to instruct the jury in the manner required by Nelson was harmless, the record here does not supply an evidentiary basis that would permit the jury to find that defendant knew that he was compelling the victim to engage in sex for purposes of the coercion counts, but conclude otherwise with respect to the rape counts. Under the theory of the case that went to the jury, defendant either knew that the victim believed that the threats he manufactured to induce her to have sex with him were real threats, in which case he committed both rape and coercion, or he did not know, in which case he committed neither offense. The jury found that he knew. Under those circumstances, the *352 trial court's omission of the instruction required by Nelson was harmless.
Affirmed.