Argued and submitted December 3, 2019, affirmed March 31, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM JACK PARKERSON,
*Defendant-Appellant.*

Klamath County Circuit Court
1401933CR; A163629

484 P3d 356

At defendant's jury trial for attempted aggravated murder with a firearm and first-degree assault with a firearm, Pascoe, who drove defendant away from the scene of the crime, testified that defendant twice shot a police officer. Defendant requested that the jury be instructed both that Pascoe was an accomplice witness as a matter of law and that Pascoe's testimony should be viewed with distrust by the jury because of her accomplice status. The trial court denied the request. The jury returned a verdict of guilty on both counts. On appeal, defendant assigns error to, among other things, the court's (1) failure to issue the accomplice instructions, (2) failure to instruct the jury on the firearm element of each of defendant's offenses, and (3) instruction that a nonunanimous jury verdict could support a conviction of the charged crimes. *Held*: Although the trial court erred in each respect, none of the trial court's errors required reversal. Pascoe's indictment for the same crimes as defendant made Pascoe an accomplice as a matter of law, entitling defendant to the requested accomplice jury instructions. However, given the other evidence adduced at trial, those instructions would have had no tendency to affect the jury's finding of guilt. The court's failure to instruct the jury that it needed to find whether defendant used a firearm during his offenses was harmless because the jury found that defendant used a weapon during the commission of his offenses and the facts were such that the only weapon that could have been used was a firearm. The court's instruction that the jury could return a nonunanimous verdict likewise did not require reversal, because the jury returned unanimous verdicts on both counts.

Affirmed.

David G. Hoppe, Judge.

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. Also on the opening and a supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. William Jack Parkerson filed a supplemental brief *pro se*.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

LAGESEN, P. J.

Affirmed.

## LAGESEN, P. J.

At defendant's jury trial for attempted aggravated murder with a firearm and first-degree assault with a firearm, Pascoe, who drove defendant away from the scene of the crime, testified that defendant twice shot a police officer. Defendant requested that the jury be instructed both that Pascoe was an accomplice witness as a matter of law—because Pascoe had been indicted for the same crimes as defendant—and that Pascoe's testimony should be viewed with distrust by the jury because of that accomplice status. The trial court denied the request. The jury returned a verdict of guilty on both counts. On appeal, defendant assigns error to, among other things, the court's (1) failure to issue the accomplice instructions, (2) failure to instruct the jury on the firearm element of each of defendant's offenses, and (3) instruction that a nonunanimous jury verdict could support a conviction of the charged crimes. We affirm.

According to the evidence presented at trial, Officer W was on patrol in Klamath County when he observed a vehicle occupied by three people and missing a front license plate. In the vehicle, Pascoe sat in the driver's seat, defendant sat in the front passenger seat, and another passenger, Holmgren, sat in back. W pulled Pascoe over for not having a front license plate. Holmgren got out of the stopped vehicle and walked past W; he seemed familiar to W, but W could not place him. W turned back to face the vehicle and, in his words, "I see this, there's a black barrel, set of eyes, there's a bang. And my face is on fire." Defendant shot W in the face from a distance of eight to 12 feet. W's gun was holstered, so, instead of shooting back, he ran down a nearby alleyway. Defendant shot him once more in the back, then got back into the vehicle. Pascoe drove defendant away.

The police picked up Holmgren at a nearby Big Lots shortly after the incident. The police apprehended defendant and Pascoe the next day. Before they were arrested, they went to the home of one of defendant's acquaintances. Defendant told the acquaintance's brother, DeMartini, that he had "blasted a cop in the face and that they needed a place to go." Defendant said that he had used a .45 Hi-Point in the shooting, which he had buried in the mud in the Klamath Marsh.

Defendant was indicted by a grand jury for one count of attempted aggravated murder with a firearm, ORS 163.095, and one count of assault in the first degree with a firearm, ORS 163.185. Pascoe was indicted on the same day by the same grand jury for the same crimes, as well as two counts of criminal conspiracy, ORS 161.450; ORS 163.185: one for each count that defendant was charged with. The state later dismissed the charges against Pascoe without prejudice for the stated reason that it was "in the best interest of the parties."

Pascoe was one of the witnesses against defendant at his trial. She remembered that, earlier on the day of the shooting, she, defendant, and Holmgren were hanging out at a friend's house. Speaking to Holmgren, defendant said that he would not stop for the police. When asked at trial what Pascoe understood that statement to mean, she testified, "I didn't really understand it to mean anything to me because I was the driver of my vehicle, and if I'm getting stopped, I'm stopping." However, Pascoe knew that defendant had a handgun tucked in his waist. The three of them got into Pascoe's vehicle and left the house. Shortly thereafter, W pulled Pascoe over. As soon as Pascoe stopped, Holmgren got out of the car. A few moments after that, defendant got out of the car. At that point, according to Pascoe,

> "everything happened really fast. I heard a shot as I was reaching into my glove box to get my insurance and registration because I knew that's what they ask for, and as I was reaching I heard this shot, and so of course I turned to look and—excuse me. And when I looked back, I saw [defendant] standing and pointing like this and I heard another shot, and I turned back around really fast because I didn't want him to know that I saw him, and—and I heard the officer screaming. And when I turned to the other way like this, I saw him holding his face and he had his other arm out like this and he was just yelling, screaming like this awful scream and was running away, like away, you know, like to the other side of the street. And I slunk down in my seat a little because at the time it looked like the officer like maybe had a weapon pointed this way and I didn't want to get shot, you know, and so I slunk down in my seat, and at the time, at that time [defendant] came back and got in my car and he told me to drive."

Pascoe testified that she had not been expecting defendant to shoot anyone, and that she thought it was "a possibility, absolutely" that defendant was going to kill her when he got back in the car. When asked why she drove away, she responded, "Who wouldn't dri—I mean, I didn't feel like I had a choice. I mean, I'm going to do what he says, he has a gun, he just shot someone."

Defendant's theory at trial was that the jury should have reasonable doubt that he was the shooter, positing that Holmgren was a possible alternative suspect. Defendant requested that the trial court instruct the jury that Pascoe was an accomplice as a matter of law and that accomplice witness testimony should be viewed with distrust.[1] Defendant argued that the indictment against Pascoe for the same crimes was enough to warrant a matter-of-law accomplice instruction. The court declined to issue the instruction, concluding that the indictment alone was not enough and that the other evidence at trial did not establish that Pascoe was an accomplice as a matter of law. The jury unanimously found defendant guilty on both counts and found that defendant was a dangerous offender under ORS 161.725.

Defendant appeals. In his combined first three assignments of error, he contends that the trial court erred in denying his request to deliver the accomplice jury

---

[1] Defendant requested UCrJI 1056, UCrJI 1057, and UCrJI 1058(2). UCrJI 1056 provides:

"The testimony of an accomplice in and of itself is not sufficient to support a conviction. There must be in addition some evidence other than the testimony of an accomplice that tends to connect the defendant with the commission of the crime.

"This other evidence, or corroboration, need not be sufficient by itself to support a conviction but it must tend to show something more than just that a crime was committed. It must also connect or tend to connect the defendant with the commission of the crime."

UCrJI 1057 provides:

"If you determine that a witness was an accomplice, then you should view that witness's testimony with distrust."

UCrJI 1058(2) provides:

"You are instructed as a matter of law that [accomplice witness] is an accomplice in the commission of the crime of [*crime with which defendant is charged*]."

(Second brackets and italics in original.)

instructions, particularly the accomplice-as-a-matter-of-law instruction, UCrJI 1058(2). As he did below, defendant argues that the "fact that a grand jury had found probable cause to indict Pascoe for the two offenses at issue necessarily proves that there was sufficient evidence to charge Pascoe with the crimes with which defendant was charged." The state responds that evidence must be presented *at trial* to support an accomplice-as-a-matter-of-law determination and no such evidence that Pascoe was an accomplice was presented.

The accomplice instructions at issue here are statutory instructions that must be delivered by a trial court "on all proper occasions." ORS 10.095. Specifically, ORS 10.095(4) requires that, "on all proper occasions," the jury be instructed that "the testimony of an accomplice ought to be viewed with distrust." We review for legal error "[w]hether an occasion is a 'proper' one for the delivery of one of the statutory instructions." *State v. Nelson*, 309 Or App 1, 6, 481 P3d 314 (2021). Our task here is to determine whether the trial court was required to conclude that, because Pascoe was indicted for the same crimes as defendant, she was an accomplice as a matter of law.

ORS 136.440(2) provides, in part, that "an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165." A "criminal action" is "an action at law by means of which a person is accused of the commission of a violation, misdemeanor or felony." ORS 131.005(6). The Supreme Court has explained under what circumstances a witness is an accomplice and when it is appropriate for a trial court to issue an accomplice-as-a-matter-of-law instruction:

> "[A] person is an 'accomplice' for purposes of the corroboration requirement if 'the evidence is legally sufficient to justify an indictment of or information against a witness as an accomplice to the offense charged against the defendant, not necessarily to convict the witness of it.'"

*State v. Oatney*, 335 Or 276, 284, 66 P3d 475 (2003), *cert den*, 540 US 1151 (2004) (quoting *State v. Hull*, 286 Or 511, 516, 595 P2d 1240 (1979)).

> "If there is no dispute regarding whether a witness is an accomplice witness—that is, sufficient evidence exists to charge, but not necessarily to convict, the witness of the crimes with which the defendant is charged—then the trial court may determine, as a matter of law, that the witness is an accomplice. If, however, the facts regarding whether a witness is an accomplice are in dispute, then the jury decides, and the *defendant* must prove that the witness is an accomplice in order to require corroboration."

*Id.* at 284-85 (citing *Hull*, 286 Or at 515-17 (emphasis in original; internal citation and footnote omitted)). Thus, a witness is an accomplice as a matter of law if "sufficient evidence exists to charge" the witness with the same crimes that the defendant is charged with. *Id.* at 284.

In *State v. Torres*, 207 Or App 355, 142 P3d 99 (2006), we concluded that an indictment charging a witness with the crimes for which the defendant is charged conclusively establishes a witness's accomplice status. Similar to the case here, the defendant in *Torres* assigned error to the trial court's failure to conclude that one of the witnesses at trial, Haight, was an accomplice as a matter of law. *Id.* at 359. In fact, Haight had been charged, tried, and acquitted for several of the same crimes as the defendant. The state argued that the acquittal meant that Haight was not an accomplice. *Id.* We summarized the applicable rule, "[I]f there is sufficient evidence to charge a witness of the crime with which a defendant is charged, then the trial court 'may determine, as a matter of law, that the witness is an accomplice.'" *Id.* at 359-60 (quoting *Oatney*, 335 Or at 284). Then, we concluded that, because Haight was charged with some of the same crimes as the defendant, he was an accomplice as a matter of law as to those counts on which both were charged:

> "As pertinent here, the indictment demonstrates that Haight was charged as a codefendant in Counts 9, 10, 15, 42, and 43. Accordingly, he was an accomplice as a matter of law for the purpose of those counts ***."

*Id.* at 363.

On the issue of whether being charged for the same crimes makes a witness an accomplice witness as a matter of

law, *Torres* is not materially distinguishable from this case. Like Haight, Pascoe was charged with the same crimes as defendant. And, like Haight's acquittal before defendant's trial, the dismissal of Pascoe's charges by mutual agreement with the state does not change the fact that a grand jury (the same one that indicted defendant) found probable cause to indict Pascoe for defendant's crimes.[2] That defeats the state's contention that a defendant cannot rely on an indictment to prove accomplice-witness status and, instead, must prove at trial the underlying facts necessary to warrant an accomplice-as-a-matter-of-law instruction. The trial court therefore erred in declining to issue the accomplice instructions.

That leaves the question of whether the trial court's error was harmless. We must affirm despite trial court error if there is little likelihood that the error affected the verdict. *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020). "To make that determination, 'the court considers the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Id.* (quoting *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2015)). We conclude here that there is little likelihood that the error affected the verdict.

As an initial matter, under Oregon law, the accomplice-witness instructions serve to highlight that an accomplice might be shifting blame from themselves to the defendant: "[T]he purpose of the instructions addressing accomplice testimony, including the instruction[s] at issue here, is to address the concern that 'criminals may falsely accuse others of their misdeeds in order to minimize their own culpability.'" *Nelson*, 309 Or App at 7 (quoting *State v. Simson*, 308 Or 102, 108-10, 775 P2d 837 (1989)). On these particular facts, that blame-shifting dynamic, to the extent present, was not a particularly strong one. The issue for the

---

[2] We allow that, if the state had proved that the indictment was dismissed for lack of probable cause or otherwise demonstrated that it lacked probable cause for the indictment it sought and obtained against Pascoe, we might have reached a different conclusion. But here, Pascoe and the state agreed to dismissal, and the state did not demonstrate that the case it made to the grand jury was insufficient to support the indictment it obtained.

jury was the identity of the undisputedly male shooter, so Pascoe's testimony identifying defendant as the shooter did not operate to shift blame from her to him, minimizing the need for the instruction to address potential blame shifting.

Given the nature of the evidence and arguments in this case, the instructions, even if given, would have had no tendency to affect the jury's finding that defendant was the shooter. W testified that he was facing defendant when defendant shot him from a distance of eight to 12 feet, and he specifically identified defendant in court as the shooter. Holmgren's sworn video deposition, which was shown to the jury, implicated defendant and was consistent with both Pascoe's and W's testimonies on the major details of the shooting. Although testimony about which door of Pascoe's car the shooter emerged from differed, multiple witnesses confirmed that, after shooting W, the male shooter got back into Pascoe's vehicle rather than walking away. As the state pointed out, undisputed evidence established that Holmgren, not defendant, was the one who walked away and was apprehended quickly at a nearby Big Lots. Finally, as noted earlier, there was evidence of defendant's own admissions to being the shooter. DeMartini testified that defendant told him that he had "blasted a cop in the face" using a .45 Hi-Point that he had buried in the mud in the marsh. On this record, there is no reason to think that there is any likelihood that the jury would have reasonable doubt about defendant's identity as the shooter, had it been supplied the accomplice-witness instructions with respect to Pascoe.

Defendant also assigns as plain error the trial court's failure to instruct the jury that it needed to find whether defendant used or threatened the use of a firearm during the commission of each of defendant's offenses. Although that error is, indeed, a plain one, it does not provide grounds for reversal because it is harmless. As we have explained, "One circumstance in which we will not and cannot exercise our discretion to correct a plain error is when that error is harmless, that is, when there is little likelihood that the error affected the jury's verdict." *State v. Kerne*, 289 Or App 345, 349, 410 P3d 369 (2017), *rev den*, 363 Or 119 (2018). Here, notwithstanding the lack of the instruction, with respect to each offense, the jury was instructed on

the aggravating factor that defendant used a weapon in the commission of the offenses, and the jury found that aggravating factor present. Because the only weapon that the jury could have found defendant used was a gun—the record would not allow for a finding of any other weapon—the jury necessarily found that he committed the offenses with a firearm. Thus, defendant was not harmed by the omission of the instructions on these particular facts. *See id*. at 349-50 (although court's instruction erroneously omitted element of offense with respect to some counts, error was harmless where, in view of how the case was tried, jury's verdict on other counts demonstrated that jury made the necessary findings to convict).

A few more matters require resolution. Defendant assigns error to the trial court's instruction to the jury that it could return a nonunanimous verdict. The jury's verdicts on Counts 1 and 2 were unanimous. That claim of error is therefore foreclosed by *State v. Flores Ramos*, 367 Or 292, 294, 334, 478 P3d 515 (2020) (holding that error in instructing the jury that it could return nonunanimous guilty verdicts did not require reversal of convictions rendered by unanimous guilty verdicts), and *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (same). Defendant also contends that the court erred in admitting evidence that defendant's psychologist had diagnosed defendant with antisocial personality disorder, a contention we reject without written discussion. Additionally, in a *pro se* supplemental brief, defendant challenges (1) the denial of his motion for judgment of acquittal; (2) the court's refusal to suppress Holmgren's identification of defendant; and (3) the admission into evidence of Holmgren's deposition. He additionally claims that the prosecution failed to disclose favorable evidence to the defense, in violation of due process. Having considered those contentions, we conclude that defendant has not demonstrated that they provide grounds for reversal on appeal.

Affirmed.