Argued and submitted June 18, 2020, affirmed July 14, 2021

Lowell E. PATTON,
individually and as Trustee,
*Plaintiff-Counterclaim Defendant-Appellant,*
*and*

PATTON OREGON PROPERTIES, LLC,
*Counterclaim Defendant-Appellant,*

*v.*

William C. COX,
*Defendant-Counterclaimant-Respondent.*

Multnomah County Circuit Court
17CV17589; A169460

495 P3d 711

Appellant Patton hired respondent Cox, a land use lawyer, to help him develop some property for the purpose of selling it. They agreed that Cox's compensation would be contingent on the development and sale of the property. After 12 years of work, but before the property sold, Cox requested $2 million in compensation and Patton refused to pay him. Cox sued Patton, asserting claims for unjust enrichment and *quantum meruit*. At trial, Patton argued that a "benefit conferred" is an element of *quantum meruit*, that the jury should be so instructed, and that the jury should be required to answer on its special verdict form whether Cox had conferred a benefit to Patton. The trial court disagreed but included a "benefit conferred" element on the unjust enrichment claim. The jury returned a $1,560,000 verdict in favor of Cox on the *quantum meruit* claim. Patton appealed, renewing his arguments below. *Held*: Assuming that the trial court erred, any error in omitting a "benefit conferred" element from the jury instructions and verdict form was harmless. Patton's theory of his case conceded that Cox had conferred some benefit, and the jury found on Cox's unjust enrichment claim that Cox had conferred a benefit. The trial court's omission of an explicit requirement that the jury find a benefit conferred on the *quantum meruit* claim was therefore harmless.

Affirmed.

Thomas M. Ryan, Judge.

Timothy R. Volpert argued the cause for appellants. Also on the briefs was Tim Volpert PC.

Erica R. Tatoian argued the cause for respondent. Also on the brief were James E. Mountain, Jr., and Harrang Long Gary Rudnick P.C.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Appellants Lowell Patton and Patton Oregon Properties, LLC (collectively, Patton), hired respondent Cox, a land use lawyer, to help him develop some property for the purpose of selling it. They agreed that Cox's compensation would be contingent on the development and sale of the property. After 12 years of work, but before the property sold, Cox requested $2 million in compensation and Patton refused to pay him. Cox sued Patton, asserting claims for unjust enrichment and *quantum meruit*. At Cox's jury trial, Patton argued that a "benefit conferred" is an element of *quantum meruit*, that the jury should be so instructed, and that the jury should be required to answer on its special verdict form whether Cox had conferred a benefit to Patton. The trial court disagreed that the jury should be instructed that "benefit conferred" was an element of *quantum meruit*, but, on the unjust enrichment claim, the court did include a "benefit conferred" element. The jury returned a $1,560,000 verdict in favor of Cox on the *quantum meruit* claim. It rejected the unjust enrichment claim, but only after answering "yes" to the question on the verdict form as to whether Cox had "confer[red] the benefit of his services" to Patton.

On appeal, Patton assigns error to the trial court's omission of a "benefit conferred" element from the jury instructions on the *quantum meruit* claim and the portion of the verdict form addressing that claim. We conclude that, because Patton's theory of the case at trial presupposed that Cox's legal services conferred a benefit, any error—assuming without deciding that there was error—is harmless. We therefore affirm.

## FACTS

This case, as noted, turns on a harmless-error analysis. Assessing whether an alleged instructional error is harmless "requires us to conduct a review of the whole record to assess the likelihood that the error permitted the jury to reach an incorrect result." *Purdy v. Deere and Company*, 281 Or App 407, 430, 386 P3d 2 (2016), *rev den*, 361 Or 100 (2017). In so doing, we evaluate the instructions given as a whole, the evidence presented at the trial,

and the parties' theories of the case as presented at trial. *Id*. Because of this "whole record" review requirement, we describe in some detail the parties' dispute and how they tried this case.

Patton owns 225 acres of real property located near Happy Valley, Oregon. In 2005, he hired Cox to help him develop the property for sale. Patton previously had employed Cox's services for development of other properties, always paying Cox by the hour. But this time, they entered into a contingency fee agreement. They did so to offset Patton's costs, given the lengthy effort and high out-of-pocket expense that they anticipated would be required to obtain permits and government approvals to develop this particular property. The agreement provided that Cox would be paid once there was a master plan in place and the property was zoned and sold. Based on the value of the property, Patton projected that the amount that Cox would be paid for his work would end up being around $3.3 million, but, under the terms of the agreement, the exact amount would depend on what the property sold for.

Over the next 12 years, Cox worked to develop the property, putting in an average of 15 hours per week. He worked with a team of experts to develop a concept for a master plan for the property, but the city in which the property was located at that time, Damascus, did not approve the plan. After it became clear to Cox that Damascus would not allow Patton to develop the property, Cox worked to de-annex the property and move it to a different city—a process that required lobbying the legislature and representing Patton in appellate litigation. Cox succeeded, and the property eventually ended up in the City of Happy Valley's care.

At that point, in Cox's view, he had "gotten all the road blocks out of the way, and [the property] was ready to be developable" within Happy Valley. In the spring of 2017, he and Patton agreed that he had completed his work on the property. Cox asked Patton to pay him $2 million for his legal services benefitting the property over the course of the 12 years, and Patton refused. Unable to resolve the dispute without litigation, Patton sued to have the fee agreement declared void, and Cox counterclaimed for, among other

things, unjust enrichment and *quantum meruit*, seeking payment for his work on the property.

The case proceeded to a bifurcated trial. In the first part of the trial, where Patton sought a declaratory judgment voiding the fee agreement, the court found that the agreement "was void when signed and remains so."[1] The second part of the bifurcated trial was a jury trial on Cox's counterclaims.[2]

From the outset of the jury trial, both parties recognized that Cox's work resulted in a benefit to Patton in terms of advancing his objective of selling the property as developable land. The parties had different understandings, however, of Cox's legal theory of recovery and how that recovery should be measured. Cox framed the method of calculating his recovery as the value of his work. That is, the hours Cox expended on the project multiplied by his hourly fee:

> "Mr. Cox will tell you he charged a below market rate for his services at $250.00 an hour in that timeframe, and just work as a land use lawyer, and providing development consultant services. He will tell you that he worked 9,000 hours over all those years helping Mr. Patton. In the spring of 2017 Mr. Cox asked Mr. Patton to pay him two million for his services. Mr. Patton refused. Mr. Cox is here asking you to recognize the value of his work over 12 years to Mr. Patton's benefit."

Patton, on the other hand, framed the method of calculating Cox's recovery as a measurement of the benefit conferred on the property. That is, how much Cox's efforts increased the dollar value of the property. Addressing the jury, Patton's counsel explained:

> "So your task will be, to step back and look at what you believe Mr. Cox did. What he has proved for you that he has done, and then to determine how much did that benefit the property. Now we're not claiming that—and Mr. Patton's

---

[1] The question of whether the trial court properly voided Cox's fee agreement is not before this court.

[2] The court ruled that its ruling voiding the fee agreement could not come into evidence during the second part of the bifurcated trial but that evidence of the agreement itself could.

not here saying that Mr. Cox didn't do work, and that there wasn't some benefit to the property, we're not claiming that. Be we are claiming that we are two million dollars, the lawsuit[']s for four million dollars, we're claiming that there wasn't that sort of a benefit conferred to the property."

Patton testified at trial that, in his view, Cox did not help very much but still conceded that Cox (1) worked to de-annex the property from Damascus and (2) represented Patton's interests in the property at the legislature and in litigation.

The parties' differing understandings of how to calculate recovery fueled a related disagreement over whether a "benefit conferred" was an element of *quantum meruit* recovery, and, if so, how that should be conveyed in the jury instructions and special verdict form. In discussing the *quantum meruit* instruction's third element, Patton's counsel explained, "[T]hat bracket says, 'Mr. Patton requested that the work be performed.' I think what needs to be added— *and actually received a benefit from the work performed*. So there, I think, has to be a reference to work having been performed." (Emphasis added.) In response, the court suggested the following revision during the following exchange:

"What if it said, 'Number 1, Mr. Patton requested that the work be performed. Number 2, Mr. Patton benefitted from the work,' then, 'Number 3, Mr. Cox expected,' and so forth?

"[PATTON'S COUNSEL:]    I think that would work.

"THE COURT:    What's your position on that?

"* * * * *

"[COX'S COUNSEL:]    * * * [T]he problem I'm having is there's two separate theories. Unjust enrichment talks in terms of benefit. Quantum meruit only talks in terms of work performed and payment. It doesn't conflate benefit. That's not part of a quantum meruit claim. That's not an element."

After the parties' lawyers and the court reviewed the applicable case law, all were in agreement that the unjust enrichment claim required proof of a benefit. As for the *quantum meruit* claim, the court concluded that, to the extent it included an element of a benefit, the last sentence of the proposed instruction adequately addressed that element:

"It seems to me \*\*\* that the last sentence of the proposed instruction really incorporates what [*Hazelwood Water Dist. v. First Union Management*, 78 Or App 226, 715 P2d 498 (1986),] was talking about. *Hazelwood* says the measure of quantum meruit is the reasonable value of the benefit to the recipient. The last sentence of our proposed instruction says, 'If you find that Mr. Cox has proved these elements, then Mr. Cox is entitled to the reasonable value of the services he rendered.'"

Disagreeing, Patton, through counsel, made his record:

"I said this before to be a conflation, but that the damages issue for both quantum and unjust enrichment requires a benefit to be conferred.

"\*\*\*\*\*

"\*\*\* And again, this gets to kind of the conflation idea, I think under the—under restitution for both of these theories, but it—the rule reads that the nature of restitution for a benefit conferred on another is the value of the benefit to the recipient and not the expense to the party who confers it."

He also requested that the jury be instructed, "If you find that [Cox] conferred no benefit on [Patton], then [Cox] is not entitled to recover on his claims of quantum meruit or unjust enrichment." And Patton's proposed special verdict form included the question, "Did [Cox] confer a benefit to [Patton] as alleged?" The court did not include that wording in the instructions or form.

Instead, as ultimately issued to the jury, the *quantum meruit* section of the special verdict form posed the following five questions: (1) "Did Mr. Cox establish that Mr. Patton requested that Mr. Cox provide services to assist him in developing the Carver Property?"; (2) "Did Mr. Cox establish that he expected Mr. Patton to pay him for the services to assist him in developing the Carver Property?"; (3) "Did Mr. Cox establish that Mr. Patton knew or should have known that Mr. Cox expected to be paid for his work to assist in developing the Carver property?"; (4) "Did Mr. Cox perform work?"; (5) "What is the reasonable value of the work that Mr. Cox did for Mr. Patton?" On Cox's unjust enrichment claim, consistent with the parties' agreement

on the elements of that claim, the court instructed the jury, "In order to prevail on this claim, Mr. Cox must show that Mr. Patton was enriched by, or benefitted from Mr. Cox's services, and that it would be unjust for Mr. Patton to retain the benefit." In keeping with those instructions, the unjust enrichment portion of the verdict form asked, (1) "Did Mr. Cox confer the benefit of his services to Mr. Patton to assist in developing the Carver property?" and (2) "Was Mr. Patton unjustly enriched by the services of Mr. Cox?"

During closing argument, Patton argued, in line with the theory of the case expressed in his opening statement, that Cox had conferred a benefit but that it was only a small one: "Now there's no doubt, but that Mr. Cox had some involvement in the appeal process that came down, and the result eventually a de-annexation of Mr. Patton's property, no doubt about that. And that there's some benefit conferred by that." Patton also allowed that Cox "played some role" in getting "the property into Happy Valley," then argued, "is it more likely that it can get done in Happy Valley? Probably. But that by itself isn't a result of what Mr. Cox has done. It's as much a result of what Mr. Patton has done ***." Patton went on to summarize his theory, "We're not suggesting that Mr. Cox didn't do anything and that there isn't some value to it. We never suggested that. What we are suggesting is that when he came and demanded $2 million, that's too much." Patton therefore floated to the jury a figure that, in his view, was more in line with the benefit that Cox conferred:

> "So what does Mr. Patton think about that? We think that a number 25,000 for benefit may be reasonable, even though there's no proof on it. The key question in this case, ladies and gentlemen, from Mr. Patton's standpoint, is the reasonable value of services. *** And that's the second question. That's the quantum meruit question."

Patton ultimately concluded:

> "I'll repeat. We're not standing here and we're not saying that Mr. Cox was not entitled to anything. I want you to be clear about that. But he does have the burden of proof. He does have the preponderance to establish the view, the value of the benefit that's been given to this property, it's not there, and that he gave to the property, that's not there, and the reasonable value of his services. And simply by

having himself and his wife testify to this subject to the quality of that proof, you should consider it.

"So what is the bottom line? It's up to you to decide the reasonable value of his services. We suggest maybe $50,000 to that. Granted, he did a lot of time, put in a lot of time, but we really—remember, it's his burden of proof, and so it's really kind of a guessing game in terms of how accurate his information is. So we are proposing that that would be a reasonable way to do it."

On the *quantum meruit* claim, the jury found that "the reasonable value of the work that Mr. Cox did for Mr. Patton" was $1,560,000. The jury did not find for Cox on the unjust enrichment claim, but it did answer "Yes" on the verdict form to the unjust enrichment question, "Did Mr. Cox confer the benefit of his services to Mr. Patton to assist in developing the Carver property?" The court entered judgment in favor of Cox.

Patton appeals, contesting in four assignments of error the trial court's refusal to require that, in order to uphold a restitution award under *quantum meruit*, the jury explicitly find that Cox conferred a benefit to Patton. Patton argues that a "benefit conferred" is an element of *quantum meruit* and that, therefore, the court legally erred in the following ways: (1) by entering a judgment in favor of Cox absent a jury finding that Patton benefitted from Cox's services; (2) by leaving off of the special verdict form the question whether Patton benefitted from Cox's services; (3) by refusing to use a proposed verdict form that included the question of whether Patton benefitted from Cox's services; and (4) by refusing to instruct the jury that Cox could not recover in *quantum meruit* unless Cox's work benefitted Patton. Cox responds that a benefit conferred is not an element of a *quantum meruit* claim when that claim, as here, is based on an implied-in-fact contract, and that, in any event, any error in omitting "benefit conferred" from the jury instructions and verdict form was harmless.

## ANALYSIS

We start by clarifying what is and is not at issue on appeal. The parties' arguments below, and to some extent on appeal, addressed two distinct but related concepts that,

because of their connection, could generate confusion about what we are, and are not, called upon to decide. The first concept is one that Patton advanced at trial and advances again on appeal: that "benefit conferred" is an element of *quantum meruit*. The second concept is one that Patton advanced (at times) at trial but does not advance on appeal: that restitution in a *quantum meruit* claim should be calculated by measuring the monetary benefit that the respondent received from the claimant's services, rather than the value of the services provided. At some points in the trial, Patton appeared to be using his conception of the proper method of calculating restitution—the increased-value-to-property method—as support for his contention that the jury needed to find a "benefit conferred" element. But, on appeal, Patton does not argue that the jury was improperly instructed on how to calculate Cox's restitution;[3] he just argues that the jury needed to explicitly find that Patton had received a benefit from Cox's work, framing a "benefit conferred" element as a "prerequisite to [Cox's] entitlement to recover in quantum meruit." Having clarified Patton's contention on appeal, we conclude that, assuming without deciding that the trial court erred in the manner Patton alleges, any error in omitting a "benefit conferred" element from the jury instructions and verdict form was harmless.

On review of whether a trial court's error in omitting an element from jury instructions or a verdict form is harmless, "We must affirm despite trial court error if there is little likelihood that the error affected the verdict." *State v. Parkerson*, 310 Or App 271, 278, 484 P3d 356 (2021). "To make that determination, the court considers the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Id.* (internal quotation marks omitted).

Here, Patton conceded to the jury that Cox had conferred a benefit to him by de-annexing the property from Damascus into Happy Valley. In Patton's opening

---

[3] The trial court instructed the jury that, if Cox prevailed on his *quantum meruit* claim, he was "entitled to the reasonable value of the services he rendered." Patton does not assign error to that instruction.

statement, Patton's counsel explained that "Patton's not here saying that Mr. Cox didn't do work, and that there wasn't some benefit to the property, we're not claiming that." Indeed, Patton himself testified at trial that Cox worked to de-annex the property out of Damascus and represented Patton's interests in the property at the legislature and in litigation. Later, in Patton's closing argument, Patton's counsel reiterated several times that Patton was not contesting that Cox had conferred a benefit. He argued, for example, "Now there's no doubt, but that Mr. Cox had some involvement in the appeal process that came down, and the result eventually a de-annexation of Mr. Patton's property, no doubt about that. And that there's some benefit conferred by that." As Patton framed his case for the jury, whether Cox conferred a benefit was never a disputed issue. Instead, the issue, as indicated by Patton's arguments, was *how much* of a benefit was conferred: "So what does Mr. Patton think about that? We think that a number 25,000 for benefit may be reasonable, even though there's no proof on it."[4]

That the jury would have found that Cox's services resulted in a "benefit conferred" had it been asked to is confirmed by its findings on the unjust enrichment claim. Although the jury ultimately did not find that Cox had proved all the elements of unjust enrichment, it did find that Cox had "confer[red] the benefit of his services." Specifically, on the portion of the verdict form addressing the unjust enrichment claim, the jury answered "Yes" to the question, "Did Mr. Cox confer the benefit of his services to Mr. Patton to assist in developing the Carver property?" Given that finding, if asked on the verdict form whether Cox conferred a benefit, the jury in all likelihood would have answered "Yes."

In that regard, this case resembles *State v. Kerne*, 289 Or App 345, 410 P3d 369 (2017), *rev den*, 363 Or 119 (2018), in which we concluded that the trial court's error in not instructing the jury on the element of an offense was

---

[4] Patton's reference to a lack of proof refers to his argument that Cox did not bring in evidence of the value of the property before and after Cox did work on it. Patton argued, "I suggest there is no evidence of how much Mr. Patton benefitted or his property benefitted from what Mr. Cox did. How did the value go up, how did it change? We haven't heard that."

harmless under the circumstances of that case. There, the defendant was charged with 10 counts of first-degree rape and 10 counts of coercion, all arising out of the same conduct. *Id.* at 346. The trial court erroneously omitted from its instructions the "knowing" element of first-degree rape, and the defendant assigned error to that omission on appeal. *Id.* at 348-49. We concluded that, because the jury found that the defendant knowingly coerced the victim into having sex with him on the coercion counts, the jury necessarily would have found the "knowing" element for the first-degree rape counts had it been properly instructed, given that all counts were based on the same conduct. *Id.* at 350-51. Consequently, the court's error had little likelihood of affecting the verdict, and we affirmed. *See also Parkerson*, 310 Or App at 279-80 (omission of element of crime from jury instruction was harmless because, given the evidence at trial and the jury's finding of other elements, the jury necessarily found the omitted element); *State v. Waldbillig*, 282 Or App 84, 93-94, 386 P3d 51 (2016), *rev den*, 361 Or 350 (2017) (instructional errors harmless where there was no evidentiary basis for *not* finding the omitted element).

The same is true here. The *quantum meruit* claim and the unjust enrichment claim were based on the same conduct, like the criminal counts at issue in *Kerne*. Because the jury found that Cox conferred a benefit in the context of the unjust enrichment claim, it necessarily would have found the same had it been instructed to do so in the context of the *quantum meruit* claim—especially given Patton's concessions in argument and testimony that Cox's services conferred a benefit, and that the dispute was about the degree of benefit.

In short, Patton's argument and the evidence told the jury that Cox had conferred a benefit, and how to value that benefit, and the jury found a benefit with respect to the unjust enrichment claim. Under those circumstances, if the jury had been instructed that it needed to find a "benefit conferred" with regard to the *quantum meruit* claim, and then asked to signal that finding on the verdict form, there is little likelihood that it would not have made the necessary finding. The trial court's omission of an explicit requirement

that the jury find Cox conferred a benefit to Patton was therefore harmless.

Affirmed.